■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JUAN DIAZ, Appellant.—Appeal by the defendant from a judgment of the County Court, Nassau County (Winick, J.), rendered April 13, 1984, convicting him of burglary in the second degree, upon his plea of guilty, and imposing sentence. The appeal brings up for review the denial, after a hearing, of that branch of the defendant's omnibus motion which was to suppress physical evidence and statements made by him to the police.

Ordered that the judgment is reversed, on the law and the facts, the defendant's motion to suppress physical evidence and statements is granted, the indictment is dismissed, and

the matter is remitted to the County Court, Nassau County, for the purpose of entering an order in its discretion pursuant to CPL 160.50.

On the afternoon of November 5, 1982, Officer John Ward was on radio patrol in the vicinity of Beach Road in Great Neck, New York. At approximately 2:50 P.M., the officer was approaching the cooperative apartment complex located at 15 Beach Road when he observed the defendant and another youth, both teen-age Hispanics, exiting from the courtyard of the complex. Officer Ward, who resided in the complex and had served on the cooperative board for six years, knew that there were no Hispanic tenants in the apartment complex. The officer was also aware of several reports in the previous six months of burglaries in the complex. These reported burglaries all had occurred in the early afternoon hours and the suspected perpetrators were described as male Hispanics.

As Officer Ward drove past the two youths, they began to act in a nervous manner. The youths quickened their pace and turned their heads away from the officer. At that point, Officer Ward radioed for assistance, made a U-turn and returned to the area where the defendant and his friend were walking. The officer called the two youths over to the car and asked where they had come from. The defendant said they had come out of the apartment complex. When asked who they were visiting in the building, the defendant gave a mumbled response. Ward then asked the defendant for his friend's apartment number, to which the defendant replied, "I don't remember. It's just over and into the right".

Officer Ward got out of his vehicle and requested that the defendant show him to the apartment. The defendant responded by stating that he had been unable to find his friend's apartment. At this point, Officer Ward requested the defendant to produce some identification. The defendant was unable to locate any on his person but stated that he had identification in his car. When the officer asked the defendant where his car was located, he pointed in an easterly direction. Officer Ward then said, "[l]et's go to your car and get it".

As Officer Ward accompanied the youths to their car, a fellow police officer, who had subsequently responded to the scene, followed the three men in his car. To this point, neither of the officers had touched the defendant or drawn a weapon. Officer Ward was surprised that the defendant had parked his car several blocks away from the apartment complex since there had been a number of empty parking spaces in front of

the entrance of the complex. The defendant, however, gave no reply when the officer asked why he had parked at that location rather than in front of the building.

Upon their arrival at the car, the defendant opened the passenger side door and got into the vehicle. Meanwhile, Officer Ward looked into the car and observed what appeared to be handle of a knife protruding from underneath the passenger seat. The officer immediately pulled the defendant from the car, reached under the seat and discovered a brown paper bag containing several pieces of silver flatware. The handle which was protruding from under the seat was a spoon from the flatware set. Officer Ward placed the bag on top of the car and asked the defendant about the flatware. The defendant stated, "this is what I take to the beach".

Officer Ward again asked for identification at which time the defendant retrieved a registration card from the glove compartment indicating that the car was registered to one Manuel Diaz, a brother or cousin of the defendant. The defendant was unable to produce his driver's license. Officer Ward's fellow officer ran a computer check on the defendant and discovered that he did not have a valid driver's license.

Officer Ward then asked about the contents of the green bag which the defendant's companion had been carrying. Officer Ward had heard a jingling noise coming from the bag while they were walking to the defendant's car. In response to the officer's inquiry, the defendant took the bag from his friend and stated that he owned the contents of the bag. He then opened the bag and showed its contents to Officer Ward. The bag contained a large amount of coins in different denominations, a few bottles of aftershave lotion, a small digital clock, assorted pieces of jewelry and lenses to a pair of Porsche Carrera sunglasses. Upon viewing the contents of the bag, Officer Ward asked the defendant about the large amount of coins. The defendant stated that he was going to his friend's house to have the coins changed into bills. When the officer asked why the defendant did not bring the coins to one of the banks in the area, the defendant shrugged his shoulders. The defendant also gave no response to the officer's questions concerning the bottles of aftershave lotion and the digital clock. The defendant did state that the sunglass lenses belonged to a pair of cheap sunglasses he owned. The officer, however, owned a pair of Porsche Carrera sunglasses similar to the lenses in the defendant's bag and he was aware that this type of glasses was valued at approximately $100.

At the officer's suggestion, the defendant agreed to go to the

precinct to speak with detectives. The defendant was then handcuffed and transported to the station house in the patrol car. The defendant made certain statements while at the precinct. Within one hour of a defendant's arrival at the precinct, the police received a report of a burglary in the apartment complex in question which had occurred earlier in the day. The complainant came to the precinct and identified the contents of the defendant's green bag as the items taken from his apartment. At that time, the defendant was formally arrested on burglary charges.

The defendant moved to suppress the physical evidence seized upon his arrest as well as his statements made subsequent thereto on the basis that they were obtained as a result of an illegal arrest. The County Court denied the defendant's motion finding that Officer Ward possessed probable cause to believe that the defendant had committed a crime. We disagree and accordingly reverse.

At the outset we note that we are in agreement with the hearing court's determination that Officer Ward, in exercising his common-law right to inquire, was justified in approaching the defendant and his companion in an effort to obtain explanatory information (see, People v Carrasquillo, 54 NY2d 248; People v Howard, 50 NY2d 583, cert denied 449 US 1023). This inquiry was justified in view of Officer Ward's specialized knowledge that (1) neither the defendant nor his companion were residents of the building, (2) there had been several recent afternoon burglaries in the building, (3) the defendant and his companion fit the general description of the burglary suspects, (4) the defendant's companion was carrying a bag, and (5) the two youths acted in a nervous manner and quickened their pace when observed by the officer. Officer Ward did not detain or restrain either of the youths during his inquiry concerning the location of their friend's apartment or during his efforts to obtain identification from the defendant. The defendant was not compelled to answer the officer's questions and while he was asked about the contents of the green bag, there was no demand that he open it (see, People v Carrasquillo, supra, at 253). The officer's conduct in removing the defendant from the car and retrieving what he thought was a knife from under the passenger seat was justified since his safety appeared to be threatened (see, Terry v Ohio, 392 US 1).

Although the defendant was not detained while the street inquiry was in progress, once the defendant was handcuffed and placed in the patrol car, despite his prior indication that he would voluntarily accompany the officer to the precinct, he

was seized within the meaning of the 4th Amendment *(see, People v Brnja,* 50 NY2d 366, 372). It is axiomatic that an officer may only seize and take into custody an individual when the officer has probable cause to believe that the person has committed a crime *(see, People v De Bour,* 40 NY2d 210; *People v Cantor,* 36 NY2d 106). The hearing court found that the information acquired by Officer Ward as a result of his initial inquiry coupled with his specialized knowledge concerning prior burglaries in the apartment complex provided a sufficient predicate for arresting the defendant. We disagree.

The officer had no knowledge that a crime had been committed or that the defendant was the perpetrator of such crime *(see, People v Robinson,* 100 AD2d 945; *People v Ross,* 67 AD2d 955). The defendant's contradictory answers to the officer's questions concerning the youths' presence at the apartment complex, his rather evasive explanations regarding the items in the green bag, together with the youths' nervous behavior, although suspicious, did not provide any indication of criminality on the defendant's part which would justify the custodial detention *(see, People v Milaski,* 62 NY2d 147; *People v Richardson,* 114 AD2d 473; *People v Joy,* 114 AD2d 517). To this extent, this case is distinguishable from *People v Williamson* (107 AD2d 727), since, in that case, the defendant, who was stopped in the early morning hours in a high-crime area, was unable to even identify the items contained in the two large bags he was carrying. In the case at bar, the defendant explained his conduct to Officer Ward and provided plausible, albeit questionable, explanations as to the items in the green bag. In view thereof, the defendant's arrest constituted an unconstitutional seizure and, accordingly, the physical evidence and statements subsequently acquired must be suppressed as fruits of the illegal arrest *(see, Wong Sun v United States,* 371 US 471; *People v Cantor, supra).* Mollen, P. J., Bracken, Brown and Sullivan, JJ., concur.