■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v MANUEL MARRERO, Appellant.—Appeal by the defendant from a judgment of the County Court, Westchester County (Berke, J.), rendered June 27, 1985, convicting him of burglary in the second degree and petit larceny, upon a jury verdict, and imposing sentence. The appeal brings up for review the denial, after a hearing, of those branches of the defendant's omnibus motion which were to suppress physical evidence, the defendant's confession, and identification testimony.

Ordered that the judgment is reversed, on the law and the facts, those branches of the defendant's omnibus motion which were to suppress physical evidence, the defendant's confession, and the identification of the defendant on December 14, 1984 at the precinct are granted, and a new trial is ordered.

On December 13, 1984, Detective Marshall of the New Rochelle Police Department was conducting an undercover investigation of drugs, gambling and vice in the Center Avenue area of New Rochelle. At approximately 1:30 P.M., he was sitting in an unmarked vehicle at the corner of Elm Street and Center Avenue. From a distance of "25-30 feet" he "observed two male Hispanics walking southbound on Center Avenue". The detective specifically testified that the two males did not look suspicious at all and that his attention was drawn to them just by "[t]he fact they were the only people on the street that day and it's not a large Hispanic area". At about 2:00 P.M., Marshall, who was now driving southbound on Center Avenue, observed "the same two male Hispanics, this

time walking northbound, the shorter of the two [the defendant] carrying a box" on his shoulder. At that point, the two males were walking in front of a 30-unit apartment house at 260 Center Avenue. Detective Marshall again testified that there was nothing suspicious about the way the two males were walking. The box which the defendant was carrying was a brown cardboard box with white tape, and Marshall was able to observe the top of a television set and a television antenna protruding from the box. The two males then got into a brown Ford station wagon. The station wagon made a U-turn and traveled down the street the wrong way. Marshall noticed that the wagon had "no rear bumper and the plate was bolted or secured on the backdoor". Marshall did not pursue the car for a traffic violation, but merely "called in" the plate number, and continued his other duties.

On the following morning, at approximately 9:00 A.M., Detective Marshall related this incident to two colleagues in the burglary and theft unit. They requested that he fill out a "Supplemental Incident Report". Marshall filled out the incident report as requested. His colleagues from the burglary unit then looked into the "previous day's burglaries reports" and learned that a burglary had been committed in apartment 3-F of the apartment house located at 260 Center Avenue and that "a TV was stolen". In its decision denying defendant's motion to suppress, the County Court made a finding of fact that the detectives also learned "through their investigation" of the prior day's burglary reports, that a cardboard box was also stolen from the apartment at 260 Center Avenue. However, there was no evidence adduced at the suppression hearing to support such a finding of fact. Although the victim of the burglary testified at trial that a cardboard box reinforced by tape was stolen from his apartment, it is well settled "that the propriety of the denial of a suppression motion must be judged on the evidence before the suppression court and that evidence subsequently admitted at the trial cannot be used to support the suppression court's denial" (People v Wilkins, 65 NY2d 172, 180).

The detectives then entered the plate number of the Ford station wagon into the computer and were advised that the car was registered to a party who lived on East Tremont Avenue in The Bronx. The detectives from the burglary unit proceeded to the Bronx address. There they found the Ford station wagon and observed an empty cardboard box with white tape in the rear thereof. After keeping the station wagon under surveillance for an hour, two individuals, who

generally resembled the two individuals first seen by Marshall on December 13, 1984, left the premises and entered the station wagon. After following the station wagon "for several minutes", the detectives stopped the vehicle. The defendant, who was driving, produced a valid New York State license. The detectives admitted that the defendant and his companion were "not free to leave at that time". Indeed, the defendant and his companion were handcuffed and were taken, along with the cardboard box, to the New Rochelle precinct. At approximately 10:40 A.M., Detective Marshall was in his office at the precinct and saw the defendant, whom he recognized from the prior day, approach the precinct from the side yard, in the custody of his two colleagues. Shortly thereafter, the defendant gave an inculpatory statement to the police.

The defendant moved, *inter alia,* to suppress the cardboard box, his confession, and the December 14, 1984 identification of him by Marshall at the precinct, on the ground that they were all the fruits of an illegal arrest, i.e., an arrest which was not based on probable cause. The County Court denied these branches of the defendant's motion. We disagree with the County Court's determination.

Initially, it must be observed, and the People do not argue to the contrary, that inasmuch as "the defendant was handcuffed and placed in the patrol car, despite his prior indication that he would voluntarily accompany the [detectives] to the precinct, he was seized within the meaning of the 4th Amendment *(see, People v Brnja,* 50 NY2d 366, 372)" *(People v Diaz,* 131 AD2d 690, 693-694). It is also "axiomatic that an officer may only seize and take into custody an individual when the officer has probable cause to believe that the person has committed a crime" *(People v Diaz, supra,* at 694; *see also, People v Hicks,* 68 NY2d 234; *People v De Bour,* 40 NY2d 210; *People v Cantor,* 36 NY2d 106).

The record adduced at the suppression hearing does not support the County Court's determination that the detectives had probable cause to believe that the defendant had committed the burglary in apartment 3-F at 260 Center Avenue. Detective Marshall's own testimony clearly indicated that the defendant did not exhibit any suspicious behavior while he was walking in front of the apartment house at 260 Center Avenue in New Rochelle, on December 13, 1984, at 2:00 P.M., carrying a television set in a box. While the subsequently filed burglary report indicated that a television set had been stolen on December 13, 1984 from apartment 3-F at that address, it must be stressed that the burglary report, filed by the com-

plainant, did not contain a description of the burglars, and could only fix the time of the burglary as between 6:00 A.M. and 6:00 P.M. Moreover, Detective Marshall testified that he never saw the defendant either enter or leave the apartment house at 260 Center Avenue *(cf., People v Fort,* 134 AD2d 917). Under these circumstances, the detectives had, at best, reasonable suspicion to temporarily detain the defendant and demand an explanation of his conduct the prior day (CPL 140.50 [1]; *Terry v Ohio,* 392 US 1; *People v De Bour, supra).* Instead, the defendant was arrested, and that arrest was not based on probable cause. Accordingly, the physical evidence, i.e., the cardboard box, the defendant's confession, and the December 14, 1984 identification of the defendant by Marshall at the precinct should be suppressed as fruits of the illegal arrest *(Wong Sun v United States,* 371 US 471; *People v Cantor, supra).*

The defendant's remaining arguments are either unpreserved for appellate review or without merit (CPL 470.05 [2]; *People v Hamilton,* 129 AD2d 736; *People v Jones,* 27 NY2d 222; *People v Mosley,* 67 NY2d 985). Mollen, P. J., Mangano and Brown, JJ., concur.

Kooper, J., dissents and votes to affirm the judgment appealed from, with the following memorandum in which Spatt, J., concurs: After review of the various relevant factors, I conclude that the defendant's arrest was supported by probable cause. Since the majority holds otherwise, I must dissent and cast my vote in favor of affirmance.

It is well settled that, "[i]n passing on whether there was probable cause for an arrest * * * the basis for such a belief must not only be reasonable, but it must appear to be at least more probable than not that a crime has taken place and that the one arrested is its perpetrator" *(People v Carrasquillo,* 54 NY2d 248, 254). Probable cause does not, however, "require proof sufficient to warrant a conviction beyond a reasonable doubt but merely information sufficient to support a reasonable belief that an offense has been or is being committed or that evidence of a crime may be found in a certain place" *(People v Bigelow,* 66 NY2d 417, 423). In rendering its determination, the suppression court must consider "all of the facts and circumstances together. Viewed singly, these may not be persuasive, yet when viewed together the puzzle may fit and probable cause [may be] found" *(People v Bigelow, supra,* at 423). The Court of Appeals has further observed that "[i]n making such a judgment, we must also bear in mind that '[i]n dealing with probable cause * * * we deal with probabilities.

These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act' " *(People v Carrasquillo, supra,* at 254, quoting from *Brinegar v United States,* 338 US 160, 175).

Tempered by the foregoing admonition and cognizant of the legal criteria to be applied, I find that when viewed together, the relevant facts establish that the officers in question possessed probable cause to effect the defendant's arrest. The defendant, departing in an automobile registered to a woman listing a Bronx address, was observed walking twice—the second time in possession of a television set in a cardboard box —past an apartment building in which the theft of a television had occurred that very day. These factors—as derived from Detective Marshall's initial report and the complainant's burglary report advising of the theft of the television at 260 Center Avenue—furnished the requisite factual predicate supporting the conclusion that—more probably than not—a crime had been committed and that the defendant was its perpetrator *(see, People v Carrasquillo, supra).*

Moreover, although Detective Marshall stated that he initially noticed the defendant and his companion because they were Hispanic, a series of additional factors—the defendant's possession of the television, the manner in which the license plate was bolted onto the back door and the car's proceeding the wrong way on a one-way street—motivated him to take note of, and file a report regarding, his observations of the defendant's activities. In any event, it is undisputed that Detective Marshall took no action whatsoever in terms of interfering with the defendant's liberty at the time he initially observed the defendant with the television set. It was only after the arresting detectives reviewed Detective Marshall's report—in conjunction with the burglary report of a stolen television set at 260 Center Avenue—that they undertook any specific action affecting the defendant. As such, rather than ascribing impropriety to the actions of the police, I would characterize the diligent steps undertaken by the arresting officers in investigating the reported burglary as representative of good police work, for which the penalty of suppression is particularly inappropriate.

For the reasons set forth above, the County Court properly determined that the defendant's arrest was supported by probable cause. Accordingly, the judgment should be affirmed.