563 So.2d 817 (1990)
STATE of Florida, Appellant,
v.
Tracy CREMER and Nick McCard, Appellees.
No. 89-1959.
District Court of Appeal of Florida, Fifth District.
July 5, 1990.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Barbara C. Davis, Asst. Atty. Gen., Daytona Beach, for appellant.
*818 James E. Taylor, Jr., Orlando, for appellee McCard.
Scott L. Richardson, Orlando, for appellee Cremer.
COBB, Judge.
The state appeals an order suppressing the various physical items seized from, and the statements of, the defendants, McCard and Cremer, following a warrantless arrest. As conceded at oral argument by counsel for the appellees, the trial court's determination was not predicated on resolution of a factual conflict in the testimony, but rather on the court's interpretation and application of the case of State v. Palmer, 543 So.2d 400 (Fla. 4th DCA 1989).
We find that the arresting deputy had sufficient probable cause to arrest for violation of Florida Statute 856.021; Florida's loitering and prowling statute. This statute provides that a police officer may arrest if the following elements are found.
(1) That the defendant loitered or prowled in a place, at a time, or in a manner, not usual for law-abiding individuals;
(2) Such loitering or prowling was under circumstances that warranted a justifiable and reasonable alarm or immediate concern for the safety of persons or property in the vicinity.
On December 20, 1988, Deputy Suarez was notified at approximately 8:00 p.m. by radio that the agricultural crime unit was to respond to a vehicle with four subjects around it parked along Highway 527 in rural Orange County. It was dark when Deputy Suarez first approached the scene, but he saw a white Ford pickup truck with its headlights on. It was parked, with only three subjects standing around it. Suarez then passed the vehicle, proceeded down Highway 527 around a curve, and turned around to approach the vehicle again, this time from the south. As Suarez approached the vehicle this time, he noticed that its headlights were off, the hood was up, the passenger door was open, and no one was around the vehicle.
Suarez then proceeded back to the turnpike overpass, looking for the occupants of the truck to see if they were broken down and looking for help. He saw no one. He then turned around and went back to the parked truck. When he got to the truck, he ran the tag through the teletype. He then checked the interior and exterior of the open vehicle and observed footprints leading from the vehicle to a gate. The area around the truck consisted mainly of pasture and woods on both sides of the roadway. He also noticed, in addition to the footprints leading away from the truck, sand on the rungs of the gate leading into the pasture, and, on the other side of the gate, the footprints continued.
Deputy Kelly got to the scene shortly after Suarez made his observations. Kelly observed the keys in the ignition of the truck. He then entered the truck, started it, and drove it approximately 100 feet to the south, then backed it up to its original position, and turned it off. Kelly and Suarez determined, at that time, that there were no mechanical difficulties with the truck.
Suarez stated that there had been numerous poaching violations and a theft of $64,000.00 worth of cattle in the area, and termed this area "trespass heaven." He had also made previous arrests in the area, and knew of incidents on this particular property in the past.
Shortly after the deputies had tested the truck, the defendants, Cremer and McCard, approached the truck from the north. They stated that McCard was the owner of the truck, that it had broken down and they (McCard and Cremer) had walked to the Circle K in Taft to call McCard's sister. Circle K is a convenience store that is several miles from the location of the truck. McCard and Cremer stated that they had been dropped off at the top of the overpass and, that when they had seen the deputies' cars, they thought that the deputies were trying to steal the truck or the battery.
Suarez stated that he was suspicious of the defendant's story because there are other convenience stores located between the site of the truck and the Circle K store in Taft where the defendants claimed to *819 have gone to use the phone. He further observed that McCard and Cremer were sweating heavily, which he thought was unusual for such a cool night. Deputy Suarez also observed that Cremer had his hands shoved all the way down in his pockets, which the deputy thought was unusual. Suarez also noticed a reddish-colored substance on Cremer's flannel shirt. He asked Cremer to remove his hands from his pockets, and when he did so, Suarez saw the same reddish-colored substance, consistent with that of blood, on Cremer's hands. Suarez felt something was going on in this situation and was not sure if it was a murder, rape, or something else.
As Suarez was talking to defendants McCard and Cremer, Kelly walked north along the fence-line and found a third defendant, Groover (not involved in this appeal), who had been in the pasture approximately 300 to 500 feet from where Suarez, McCard and Cremer were standing. Groover told Kelly that he knew McCard and Cremer, but, when Kelly returned Groover to McCard and Cremer, they stated that they had never seen him before. Suarez then placed Cremer and McCard under arrest for loitering and prowling.
At that point in time, the deputies were confronted with suspects who told inconsistent and implausible stories in regard to the truck, their relationship to each other, and their presence at the isolated scene. One suspect was caught in the act of trespassing, one had the appearance of blood on his hands and shirt, and there was a missing suspect  the fourth man originally reported to be at the truck. Under these circumstances, there clearly was a reasonable concern on the part of the officers for the safety of persons or property in the vicinity, meeting the statutory criteria of section 856.021.[1] The provisions of this statute were examined and found constitutional by the Florida Supreme Court in the seminal case of State v. Ecker, 311 So.2d 104 (Fla. 1975), cert. denied, Bell v. Florida, 423 U.S. 1019, 96 S.Ct. 455, 46 L.Ed.2d 391 (1975).
The Palmer case, relied on by the trial court, is factually distinguishable even if we agree with it. Therein, it was held that an officer's observation of a lump in the suspect's mouth, even though he was observed with a known drug dealer in an area known for drug activity, was insufficient to establish probable cause to arrest for loitering and prowling. That factual scenario is a far cry from the one in the instant case.
REVERSED AND REMANDED.
GOSHORN and PETERSON, JJ., concur.
NOTES
[1] Furthermore, the extant facts clearly created probable cause for the arrest of Groover, Cremer and McCard for trespass since Groover was caught in the act of trespassing and professed to know Cremer and McCard, clearly indicating they had come to the area together in McCard's truck. See State v. Carmody, 553 So.2d 1366 (Fla. 5th DCA 1989); T.L.F. v. State, 536 So.2d 371 (Fla. 2d DCA 1988).