## STATE of Vermont v. Jeffrey BLAIS

[665 A.2d 569]

No. 94-148

June 19, 1995. The State brings this interlocutory appeal from a district court judgment, which suppressed testimonial and physical evidence acquired following defendant's warrantless arrest on the ground there was no probable cause for the arrest. We affirm.

The trial court made the following findings. In a "fly-over," state police officers observed what they suspected was marijuana growing in a thickly wooded area between a corn field and a campground. Two police officers went to the area, via a thirty-to-forty-foot path from the campground, and found about eighty-five marijuana plants, in a clearing, along with gardening tools and fertilizer. One officer followed another path out of the clearing to a brook, where he found a hose. The officers left the plot, and one officer returned the next day to indicate its location to two other officers. They saw no one on either day. On the third day, the officers installed two ground sensors, one located on the entrance path and the second located in the plot. The monitors did not work that day; they were too sensitive and alerted frequently when it rained.

On the fourth day, the officers experienced the same problems with the monitors but then adjusted them for sensitivity. After three hours, they handed surveillance over to two other officers who hid behind a knoll thirty-to-forty feet from the plot. About one hour later, the sensor on the path alerted and then the sensor in the plot alerted, and continued to alert every five minutes. One-half hour after the first alert, defendant came down the path toward the officers and was arrested at gunpoint.

Defendant moved to suppress all evidence acquired following his arrest on the ground that the police violated the Fourth Amendment to the United States Constitution and Chapter I, Article 11 of the Vermont Constitution because they lacked probable cause to arrest him. The trial court held that there was no probable cause to arrest defendant, and the State brings this interlocutory appeal.

Defendant contends that we must give deference to the trial court's determination that the law enforcement officials had no probable cause for his arrest. He relies on *State v. Maguire*, in which we applied this standard of review in considering the challenge to probable cause for issuing a search warrant. 146 Vt. 49, 53, 498 A.2d 1028, 1030 (1985). As we noted in *Maguire*, this deferential standard of review is appropriate when a defendant is challenging a warrant because it furthers the strong constitutional preference for warrants. *Id.* "[W]hen courts subject affidavits [in support of a warrant] to too strict scrutiny, police may be encouraged to resort to warrantless searches, in hopes of relying on consent or some other exception to the warrant requirement." *Id.*

In this case, however, we are not reviewing the issuance of a warrant. In reviewing a determination on probable cause for a warrantless arrest, we rely on the trial court's findings of fact unless clearly erroneous; review of the probable cause determination is, however, de novo. See *United States v. Ingrao*, 897 F.2d 860, 862 (7th Cir. 1990); *United States v. Carrillo*, 902 F.2d 1405, 1412 (9th Cir. 1990).

Defendant concedes that the officers had reasonable suspicion to detain him temporarily to inquire into his activity, but maintains that the evidence did not establish probable cause for arrest. Probable cause for a warrantless arrest requires the same evidence required for issuance of a warrant under V.R.Cr.P. 4(b).

V.R.Cr.P. 3(a). Rule 4(b) provides that a judicial officer may issue a warrant upon finding "that there is probable cause to believe that an offense has been committed and that the defendant has committed it." A finding of probable cause must be based on substantial evidence. V.R.Cr.P. 4(b); see also *State v. Towne*, 158 Vt. 607, 615, 615 A.2d 484, 489 (1992) (holding that court must examine totality of circumstances to determine whether substantial evidence supports issuance of search warrant).

Thus, law enforcement officers may arrest a person without a warrant where they have probable cause to believe that the suspect has committed or is committing a felony. *State v. Stanislaw*, 153 Vt. 517, 527, 573 A.2d 286, 292 (1990); see also V.R.Cr.P. 3(a) (listing circumstances under which officers may arrest without warrant). "The concept of probable cause is a practical, nontechnical one that we evaluate in a common sense manner." *Stanislaw*, 153 Vt. at 527, 573 A.2d at 292. In this case, the officers knew that a felony was being committed because they had seen a plot containing about eighty-five manicured marijuana plants. The issue is whether the arresting officers had knowledge of sufficient facts to support a reasonably cautious belief that defendant had committed the felony. See *id.*

"The mere presence at the location of criminal activity cannot, in and of itself, constitute probable cause for arrest." *United States v. Villegas*, 700 F. Supp. 94, 99 (N.D.N.Y. 1988); accord *Ingrao*, 897 F.2d at 863 (physical proximity to suspected crime, without other indicia of involvement, is insufficient to support finding of probable cause); see also *People v. Marrero*, 544 N.Y.S.2d 198, 200 (App. Div. 1989) (detectives had at most reasonable suspicion to detain and question defendant where he had been seen carrying television on street in front of apartment building on day television set had been stolen from one of the apartments). The

State argues that defendant's presence alone was sufficient to establish probable cause in this case because of the remoteness of the plot, the difficulty in locating the access path, the absence of other people during the periods of observation, and the activation of the ground sensors in the plot during one-half hour of monitoring. We disagree.

In *Vega v. State*, 762 S.W.2d 1 (Ark. Ct. App. 1988), law enforcement officials discovered stolen articles under an abandoned building and staked out the building hoping that the burglars would return to retrieve the stolen property. At about 9:30 that evening, a car stopped in front of the abandoned building. The passenger got out of the car, looked in both directions, and then walked toward the building. In the darkness, the officers were unable to see the suspect enter the building. When the suspect reemerged from the darkness, the officers arrested him. When the car returned, the driver was arrested as well.

The *Vega* court held that the record was insufficient to show probable cause to make the arrest. *Id.* at 3. As the court noted, "the officers had no reason to arrest the [defendant] other than his presence near an abandoned building in which stolen goods had earlier been discovered." *Id.* at 2. The officers arrested the two men merely because they were suspected of a crime. Although the defendant's presence at an abandoned building where stolen goods were hidden may have supported a brief detention, it was insufficient to establish probable cause for arrest. *Id.* But see *United States v. Raborn*, 872 F.2d 589, 594 (5th Cir. 1989) (upholding probable cause determination under clearly erroneous standard where defendant visited isolated farmhouse, where agents had probable cause to believe that controlled substances were manufactured, and where no traffic had been observed for several weeks).

In *Ingrao*, law enforcement agents observed the defendant, carrying a black bag, emerging from a gangway that was shared by two houses. 897 F.2d at 863. One of the houses was occupied by a known narcotics trafficker; however, officers were unable to see the exit from their stake-out position. The defendant made furtive gestures before crossing the street to his car. The officers followed the defendant and observed him make stops at two social clubs and then arrested him. The court held that these observations were insufficient as a matter of law to establish probable cause for arrest. *Id.* at 865. The *Ingrao* court noted that "none of the agents observed [the defendant] engage in any illegal activity and none recognized him as anyone they knew anything about." *Id.* at 864. Thus, the defendant could arguably have been "an innocent acquaintance of [the known trafficker], or a resident or visitor of another house, or a salesman, or someone merely walking down the street." *Id.* The officers' suspicions may have been sufficient to support a *Terry* stop; however, they were insufficient to support the intrusion of a full-blown arrest. *Id.* at 865-66.

The instant case is analogous to *Vega* and *Ingrao*. At the time of the arrest, the officers knew that marijuana was being cultivated in a visually screened area that was connected to a busy campground via a path through heavy vegetation. The officers heard the ground sensors activate, indicating someone's presence in the marijuana plot. The ground sensors activated every five minutes for about one-half hour and then defendant exited the path toward the campground. As in *Vega* and *Ingrao*, however, the officers were unable to see the plot from their stake-out, and none of the officers recognized defendant or observed him engage in illegal activity. The officers never even saw defendant until they arrested him.

The State contends that defendant seemingly had no reason to be walking through the heavy vegetation on a path

leading to the plot. While defendant's presence may have raised suspicions sufficient to allow a brief detention to inquire of his activities, "mere suspicion is not enough" to show probable cause for a warrantless arrest. *Ingrao*, 897 F.2d at 862; cf. *State v. Cremer*, 563 So. 2d 817, 819 (Fla. Dist. Ct. App. 1990) (presence at isolated scene coupled with implausible story supports probable cause for arrest); *Scretchen v. State*, 385 S.E.2d 115, 117 (Ga. Ct. App. 1989) (lack of reasonable explanation for suspicious activity may elevate reasonable suspicion to probable cause); *In re A.P.*, 617 A.2d 764, 769-71 (Pa. Super. Ct. 1992) (proximity to crime coupled with other factors such as flight or unsubstantiated explanation for presence may support probable cause for arrest). The officers did not observe defendant in the plot, nor did they investigate the area for other people until after they had arrested defendant. Cf. *People v. Rosa*, 589 N.Y.S.2d 413, 414 (App. Div. 1992) (upholding probable cause determination where, prior to arrest, one officer detained defendant at apartment entrance while other checked apartment and found it ransacked and no one there).

The only information specific to defendant was that he was walking on the path coming from the plot following some activity that alerted the sensors in the plot. Walking down a path through the woods next to a busy campground is, however, completely consistent with innocent behavior. See *Ingrao*, 897 F.2d at 863-65 (no probable cause where suspect's action is consistent with innocent behavior); *United States v. Robertson*, 833 F.2d 777, 782 (9th Cir. 1987) (no probable cause where presence on scene of criminal activity was consistent with behavior of innocent visitor). A path leading from a busy campground several feet into the vegetation is not so remote as to raise suspicions to a level necessary for probable cause.

*Affirmed.*

**Morse, J.,** dissenting. I would reverse and remand. There was probable cause to believe that it was defendant cultivating the marijuana plants. The Court has applied too high a standard to these facts.

There is no question based on the electronic monitoring that someone was in the marijuana patch for one-half hour. Defendant's basic argument, and the one adopted by the Court, is that someone else might have been on the path and tended the plants. The Court concludes that the State did not prove that defendant was the one. The Court suggests that defendant may have just stumbled upon a marijuana patch while meandering through the dense forest.

This case is not one of mere physical proximity to a crime. The plot was remote. The path was not well-travelled, at least not during the three days of police observation. During that time, no one but defendant was observed in the area. The access path was difficult to locate, being more like a tunnel through the underbrush than a path. Someone triggered not only the monitor on the access path but also a monitor in the marijuana plot. These sensors signaled the officers of someone's presence for a half hour's time. Immediately upon the heels of these signals, defendant exited the plot and walked down the path toward the officers. As the trial court stated, "when the Defendant exited the plot from one of the tunnels through the vegetation, the [officers] . . . arrested the Defendant." Looking at the facts in a nontechnical common-sense manner, the officers had enough facts to support a reasonably cautious belief that it was defendant who was cultivating the marijuana plants. What else would defendant be doing for half an hour in a patch containing eighty-five manicured marijuana plants?