922 So.2d 987 (2005)
Juvon D. PICKETT, Appellant,
v.
The STATE of Florida, Appellee.
No. 3D02-3042.
District Court of Appeal of Florida, Third District.
October 12, 2005.
Opinion Granting Certification March 8, 2006.
*989 Bennett H. Brummer, Public Defender, and Howard K. Blumberg, Assistant Public Defender, for appellant.
Charles J. Crist, Jr., Attorney General, and Richard L. Polin, Assistant Attorney General, for appellee.
Before SHEPHERD and SUAREZ, JJ., and SCHWARTZ, Senior Judge.
SUAREZ, J.
The defendant, Juvon D. Pickett, appeals a conviction and sentence for first-degree felony murder and aggravated child abuse. Pickett argues on appeal that the trial court erred in failing to suppress his statements obtained through custodial interrogation which he claims amounted to an illegal arrest, and that the trial court erred in excusing two venire persons without conducting inquiry as to the reasons for the State's peremptory strikes. We affirm in part and reverse in part based on the following facts:
On September 5, 1998, at approximately 6:00 p.m., the two-year-old daughter of the defendant, who was eighteen years old at the time, was brought to Jackson Memorial Hospital emergency room with severe injuries, which were viewed by medical personnel as "initially suspicious." Hospital medical staff concluded that Pickett's account of what had occurred was inconsistent with the level of injuries sustained by the two-year-old. The hospital then summoned its on-duty patrol officer, Officer Pena, of the Miami-Dade Police Department, to the E.R. in reference to a possible child abuse matter. At approximately 6:30 p.m., Pena conferred with Pickett who admitted being with the child at the time the injuries occurred. He explained that he had been in the park with his daughter who was struck by a football. A fight ensued and a missed punch struck her, causing her to throw up and shake uncontrollably and necessitating her being taken to the emergency room. The City of Miami Police Department was then notified because the incident took place within that city's jurisdiction. City of Miami police officers, Gomez and Gerbier, arrived at the hospital and took over the investigation. Gomez confirmed the severity of the injuries with the doctor and spoke to the defendant about how the incident occurred. Pickett related to Gomez that his daughter had been trampled in the midst of a fight during a football game, that the football hit the child and that a missed punch struck her. Gomez viewed the accounts of the incident to be "conflicting stories." The officers told the defendant that he had to go with them to talk at the police station. He was placed in a police vehicle and taken to the City of Miami Police Station. At approximately 10:00 p.m., the defendant was interviewed in the homicide room of the City of Miami Police Department where he initially gave the same version of facts that he related in the emergency room. When Detective Aguero, of homicide, questioned Pickett, he added for the first time the fact that police officers were called to the park to investigate the incident, *990 and that someone was arrested. He then stated with hesitancy that there might not be a report of the investigation at the park because he "didn't think the policeman was actually a policeman." Homicide Detective Velasquez found no record of any such incident at the park, and it was decided that Pickett should be read Miranda[1] warnings. Pickett was read each paragraph of his rights separately. At the end of each paragraph, he was asked if he understood that paragraph. He stated that he understood each paragraph. Pickett signed a waiver form indicating that he understood his rights. It was then that he confessed to inflicting severe injuries on the two-year-old. His confession was subsequently tape recorded.
Pickett was charged with first-degree murder and aggravated child abuse.

I.
Pickett claims that the trial court erred in failing to suppress his statements and confession. He moved to suppress his statements and his confession on grounds that they were obtained as a result of custodial interrogation without Miranda warnings; arrest without probable cause and involuntary waiver of rights. The trial court denied his motion after a two-day suppression hearing. On appeal, the defendant contends that his custodial interrogation amounted to an involuntary arrest which was illegally effectuated. He argues that his statements and confession were obtained without probable cause and should have been suppressed. We disagree in part.
The standard of review on a motion to suppress accords the trial court a presumption of correctness on rulings with regard to the determination of historical facts, but requires an independent review of mixed questions of law and fact that ultimately determine constitutional issues arising in the context of the Fourth and Fifth Amendments and, by extension, the due process clause of the Florida Constitution. Nelson v. State, 850 So.2d 514 (Fla. 2003), cert. denied, 540 U.S. 1091, 124 S.Ct. 961, 157 L.Ed.2d 797 (2003). A law enforcement officer has probable cause to arrest if he has reasonable grounds to believe a person has committed a felony. Shriner v. State, 386 So.2d 525 (Fla.1980). "[P]robable cause exists where the facts and circumstances, as analyzed from the officer's knowledge, specialized training and practical experience ... are sufficient in themselves for a reasonable man to reach the conclusion that an offense has been committed." Cross v. State, 432 So.2d 780, 782 (Fla. 3d DCA 1983). Conflicting explanations combined with the totality of the circumstances can provide a sufficient basis for a finding of probable cause for an arrest. See State v. Clark, 721 So.2d 1202 (Fla. 3d DCA 1998); State v. Scott, 641 So.2d 517 (Fla. 3d DCA 1994); State v. Cremer, 563 So.2d 817 (Fla. 5th DCA 1990); People v. Abner, No. 241569, 2004 WL 594948 (Mich.App. March 25, 2004) (probable cause to arrest when defendant is only person in house with abused child coupled with inconsistent stories to police). Moreover, in factually similar child abuse cases like this case, it has been held that, where the evidence shows that the child-victim is alone in the care of one or both parents when the incident occurs and the attending doctor's opinion is that abuse is the cause of the injuries, a sufficient basis for probable cause for arrest exists. See State v. Johnson, 682 So.2d 385 (Ala.1996) (probable cause to arrest after doctors conclude child abused and defendant and mother only persons *991 with child at time of injuries); Brown v. State, 725 S.W.2d 801 (Tex.App.1987)(probable cause to arrest after physician suspects physical assault and child in care of defendant alone), vacated on other grounds, 761 S.W.2d 4 (Tex. Crim.App.1988); McClinton v. State, 647 S.W.2d 400 (Tex.App.1983)(probable cause to arrest where physician of opinion that victim was battered child and child in care of defendant); see also State v. Miles, No. CA2002-06-149, 2003 WL 23095408 (Ohio App. December 31, 2003) (probable cause to arrest when defendant only person with child when injuries occurred and police observed acute bruises). Here, Pickett admitted that his daughter was in his custody when the injuries occurred; his account of the accident was inconsistent with the level of injuries she sustained; the hospital staff indicated a possibility of child abuse; and Officer Gomez viewed the defendant's stories as "conflicting." Under the totality of these facts, we find that probable cause for an arrest existed at the time that Pickett was taken into custody and placed in the police vehicle. Walker v. State, 707 So.2d 300 (Fla. 1997)(inconsistent statements coupled with totality of circumstances viewed from perspective of officer sufficient for probable cause to arrest); Shriner, 386 So.2d at 525; Clark, 721 So.2d at 1202; Scott, 641 So.2d at 517; Cremer, 563 So.2d at 817; Cross, 432 So.2d at 780; Johnson, 682 So.2d at 385; Abner, 2004 WL at 594948; Miles, 2003 WL at 23095408; Brown, 725 S.W.2d at 801; McClinton, 647 S.W.2d at 400. Since Pickett did not receive his Miranda warnings until he was already at the police station just prior to his confessing to the crime, any statements that he made while in the police car and at the station before Miranda warnings were administered should have been suppressed. Traylor v. State, 596 So.2d 957 (Fla.1992) (prior to custodial interrogation suspect must be advised of Miranda rights). The trial court's denial of the motion to suppress his post-Miranda confession was proper and thus his confession was properly admissible. The police officers carefully read him his Miranda rights, explained each paragraph and confirmed that Pickett understood each paragraph, and the confession was given only after Pickett signed the waiver form. The careful administration of Miranda warnings at the police station served to cure any condition that rendered his earlier statements inadmissible. Davis v. State, 859 So.2d 465 (Fla.2003); see Maragh v. State, 905 So.2d 207 (Fla. 3d DCA 2005).[2]Contra B.S. v. State, 548 So.2d 838 (Fla. 3d DCA 1989)(confession product of illegal arrest when juvenile taken to station and not told free to leave).
The case of B.S. v. State, 548 So.2d 838 (Fla. 3d DCA 1989), relied upon by the appellant, is distinguishable from the facts of this case. Pickett was eighteen years old and the father of a two-year-old when he was arrested; the defendant in B.S. was seventeen years old and living at home with her mother. B.S.'s mother was not present and she was at home babysitting for her younger brother. The officers came to house, stated that they "wanted" *992 her to come to the station and waited for her to change from her pajamas into her clothes. She had no choice but to do so and to bring her younger brother along with her. The State argued that B.S. had gone voluntarily to the police station, that her confession was not the tainted product of an illegal arrest and that it was therefore admissible. This court rejected that argument.
No such issue is presented in the present case because, unlike the facts in B.S., the police had probable cause to arrest Pickett at the time he was taken into custody and was placed in the police car. Pickett was first interviewed at the hospital emergency waiting room. Although he was not told he was free to leave, he reasonably could have believed that he was then being questioned for background or information purposes and that he was not being held in a custodial situation. See Roman v. State, 475 So.2d 1228, 1231 (Fla. 1985) ("some reasonable persons might assume they are not in custody unless told otherwise"). The statements Pickett gave to Officers Pena and Gomez at the Jackson emergency room are admissible since we hold that he was not in custody at that time. The trial court's denial of the defendant's motion to suppress his statements in that regard is affirmed. See Williams v. State, 564 So.2d 199 (Fla. 1st DCA 1990)(statements made outside emergency room prior to Miranda in response to information gathering admissible in felony-murder prosecution).

II.
The defendant's second ground on appeal is his claim that the trial court erred in dismissing two prospective jurors without conducting a Neil[3] inquiry. We agree with the defendant's argument and reverse for a new trial.
During voir dire, the State first attempted to back-strike prospective juror Munoz. Defense asked for a race-neutral reason for the strike of the female Hispanic juror under Melbourne v. State, 679 So.2d 759 (Fla.1996). The State responded that there had been no pattern of discrimination and that several Hispanics were seated on the panel "at this time." The trial judge did not require a reason for the requested strike and excused juror Munoz. The State then challenged juror Lopez peremptorily. The defense asked for a race-neutral reason for the strike since the juror was a Hispanic female. The trial judge declined to require a reason for the strike since there had been no pattern demonstrated. Juror Lopez was excused peremptorily.
The Florida Supreme Court has mandated that an objecting party to a peremptory strike is required to request race-neutral reasons for the strike of any person who is a member of a distinct racial group without any showing that the challenge is being used impermissibly. State v. Holiday, 682 So.2d 1092 (Fla.1996). Such was requested by the defense and the court failed to conduct the required Neil inquiry. This Court has held that failure to conduct a Neil inquiry, as required by Melbourne and State v. Johans, 613 So.2d 1319 (Fla.1993), constitutes reversible error. Alsopp v. State, 855 So.2d 695 (Fla. 3d DCA 2003) (when parties and trial judge understand prospective juror is Hispanic, general objection sufficient to require inquiry); see also Wallace v. State, 889 So.2d 928 (Fla. 4th DCA 2004)(state's argument rejected that prosecutor's use of peremptory challenge not pretextual in light of fact that black juror had already *993 been accepted on panel). There is no specification for the showing of a pattern of discrimination as a condition precedent to an explanation for a peremptory strike of a potential juror who is a member of a distinct racial or ethnic group. Bowden v. State, 588 So.2d 225 (Fla.1991); Vasquez v. State, 711 So.2d 1305 (Fla. 2d DCA 1998); see Wicks v. Publix Super Markets, Inc., 908 So.2d 1190 (Fla. 2d DCA 2005). We therefore reverse for a new trial. Wallace; Alsopp.
Affirmed in part, reversed in part, and remanded with directions.
SHEPHERD, J., concurs.
SCHWARTZ, Senior Judge (specially concurring in part).
I acknowledge, but regret, that we are forced by Melbourne v. State, 679 So.2d 759 (Fla.1996), and State v. Holiday, 682 So.2d 1092 (Fla.1996), to require that this distressing case be tried again, notwithstanding that the verdict is supported by evidence to a moral certainty that the defendant is guilty of a hideous crime, and was infected by no error which could have conceivably affected his substantial rights. In my opinion, these cases reduce the noble idea reflected in Neil[4] and Batson,[5] that peremptory challenges, like everything else in our justice system, may not be employed to effect a discriminatory purpose, to a formalistic rite in which any misstep from the intricate choreography prescribed by the cases requires reversal. And this is true even when, as here, it is beyond all doubt both that the challenges in question were not motivated by racial prejudice and that no hint of any such prejudice infected the jury which actually tried the appellant. See also Busby v. State, 894 So.2d 88 (Fla.2004). But see Busby, 894 So.2d at 105 (Bell, J., concurring in part, dissenting in part); Holiday, 682 So.2d at 1095 (Anstead, J., specially concurring); Holiday v. State, 665 So.2d 1089 (Fla. 3d DCA 1995), decision quashed, 682 So.2d 1092 (Fla.1996); Betancourt v. State, 650 So.2d 1021 (Fla. 3d DCA 1995), review denied, 659 So.2d 272 (Fla.1995); cf. United States v. Martinez-Salazar, 528 U.S. 304, 120 S.Ct. 774, 145 L.Ed.2d 792 (2000)(error in overruling cause challenge not reversible where defendant used peremptory challenge to remove juror and impartial jury decided cause); Ross v. Oklahoma, 487 U.S. 81, 88, 108 S.Ct. 2273, 2278, 101 L.Ed.2d 80 (1988)("So long as the jury that sits is impartial, the fact that the defendant had to use a peremptory challenge to achieve that result does not mean the Sixth Amendment was violated."); Dunaway v. State, 90 Fla. 142, 143, 105 So. 816, 816 (1925)("As a matter of right, defendant was entitled to no particular jury or jurors to try his case. He was entitled to a fair and impartial jury, and it is not claimed or intimated that the jury finally selected and sworn and by whom defendant was tried was not all that the law required.").
Although we are of course bound to the result, see Van Horn v. State, 485 So.2d 1380 (Fla. 3d DCA 1986), approved, 498 So.2d 426 (Fla.1986), I cannot but express my dismay that this is the law. See Lewis v. State, 597 So.2d 842, 844 (Fla. 3d DCA 1992)(Schwartz, C.J., specially concurring), decision quashed, cause remanded, 629 So.2d 102 (Fla.1993); Van Horn, 485 So.2d at 1381 (Schwartz, C.J., dissenting).
SHEPHERD, J., concurs.

On Motion for Certification
PER CURIAM.
The state's motion for certification of questions of great public importance is *994 granted. The Court certifies to the Supreme Court of Florida that this decision involves the following questions of great public importance:
1. Whether an objection to a peremptory challenge under Melbourne v. State, 679 So.2d 759 (Fla.1996), is sufficient to mandate an inquiry when the objection fails to allege with specificity that the peremptory challenge is racially motivated.
2. Whether the Supreme Court should reconsider its decision in Melbourne in light of serious problems in Florida's trial courts regarding the application of Melbourne and in light of the recent decision of the Supreme Court of the United States in Johnson v. California, ___ U.S. ___, 125 S.Ct. 2410, 162 L.Ed.2d 129 (2005).
Moreover, to the extent appropriate, it is also certified that the case involves the questions of great public importance put in Whitby v. State, ___ So.2d ___, ___ (Fla. 3d DCA Case no. 3D04-1770, opinion filed, Feb. 15, 2006)[31 Fla. L. Weekly D482, D484], 2006 WL 335480.
Motion granted, questions certified.
NOTES
[1] Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).
[2] We reject the defendant's argument that his rights were involuntarily waived. See Moore v. Dugger, 856 F.2d 129, 134 (11th Cir.1988) (defendant's confession voluntary where evidence showed he had IQ of 62, functioned at intellectual level of eleven-year-old classified as "educable mentally handicapped"); Roman v. State, 475 So.2d 1228, 1232 (Fla.1985) (confession of defendant of "dull normal" intelligence with organic brain damage voluntary when indicated verbally that he understood reading of rights); Brookins v. State, 704 So.2d 576, 578 (Fla. 1st DCA 1997)(defendant's waiver of rights knowing and voluntary where defendant had low IQ, was "borderline mentally retarded" and answered "yes," that he understood each of his rights).
[3] State v. Neil, 457 So.2d 481 (Fla.1984).
[4] State v. Neil, 457 So.2d 481 (Fla.1984).
[5] Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).