John Stephen McCLINTON, Appellant,

v.

The STATE of Texas, State.

No. 2–81–361–CR.

Court of Appeals of Texas,
Fort Worth.

Feb. 16, 1983.

Discretionary Review Refused
May 25, 1983.

Larry M. Thompson, Fort Worth, for appellant.

Tim Curry, Dist. Atty., and Christopher J. Pruitt, Asst. Dist. Atty., Fort Worth, for State.

Before FENDER, C.J., and JORDAN and BURDOCK, JJ.

## OPINION

FENDER, Chief Justice.

Appellant, John Stephen McClinton, was convicted by a jury of murder. V.T.C.A. Penal Code, sec. 19.02. That jury assessed punishment at ninety-nine (99) years imprisonment.

We affirm.

On appeal McClinton advances fifteen grounds of error. In order to put some of these grounds of error in proper perspective, and because he challenges the sufficiency of the evidence, a brief recitation of the facts is necessary. Afterwards, each ground of error will be addressed in turn; we shall not list them all here.

McClinton was convicted of the murder of Michael W. Marshall, the 3 year old son

of his "live-in" girlfriend, Theresa Hall.[1] The evidence was to the effect that Marshall was severely beaten, and that a blunt instrument 9½ inches long, and 1½ to 2 inches in diameter was introduced into Marshall's rectum. There were contusions on or near Marshall's abdomen, genitalia, and brain, caused by some sort of blunt trauma to those areas of the body. The medical examiner, Dr. Peerwani, concluded that Marshall died due to blows delivered to the right side of his head, consistent with having been struck by a human hand with tremendous force; and said that he strongly believed that Marshall's injuries were caused by a fist. These injuries were also consistent with the child's being thrown about and coming into contact with a stationary object. All Marshall's injuries occurred during a 48–60 hour period, prior to his death. These conclusions were supported by those made by Dr. Hubbard, who performed brain surgery on Marshall prior to his death.

On the day of Marshall's death, McClinton was arrested and given his so-called "*Miranda*" rights, which he indicated he understood. He did not ask for an attorney, and gave a statement to police. Later that day, after again being warned of his rights, McClinton gave a second statement, concerning the injuries to Marshall's rectum. Both statements were typed at the time they were given and McClinton signed both. At a pretrial "*Denno*" hearing, counsel stipulated that McClinton's statements were voluntary. The court complied with V.A.C.C.P. art. 38.22, and admitted these statements at trial. McClinton admitted in his statements that he had struck Marshall on the side of the head with his hand, and that Marshall's head then collided with the side of the car in which they were traveling. He also admitted that he shook the child for more than 3–4 minutes, and then threw him on the bed. After this, he realized that Marshall was in serious physical condition and drove him back to the laundromat.

Hall testified that McClinton had over-disciplined Marshall at times, and had hurt him as a result; Marshall's buttocks would sometimes be blue after McClinton had spanked him. Hall also said that Marshall was happy and smiling and did not appear to be in any type of physical pain when both Marshall and McClinton left a laundromat where Hall was doing the laundry "to go look at cars". When McClinton returned Marshall to the laundromat approximately 45 minutes to an hour later, Hall found her son lying on the car seat, unconscious, with both eyes open. Hall immediately took her son to White Settlement Hospital; he was transferred to Harris Hospital, where brain surgery was performed, and died there two days later on May 24, 1981.

McClinton was arrested on May 25, 1981, and was held in custody until trial. He was re-indicted on June 30, 1981. McClinton requested a continuance on July 2, 1981, which the trial court granted. He again asked for a continuance on July 31, 1981. This second continuance was granted. These continuances included waivers of McClinton's right to a speedy trial. There is some controversy over whether the State had announced not ready on October 13, 1981. McClinton had also signed a specific, separate waiver of his right to a speedy trial. Both McClinton and defense counsel signed all three documents which waived his right to a speedy trial.

■ McClinton's first ground of error complains that the trial court erred in failing to grant McClinton's motion to dismiss on the basis of non-compliance with V.A.C.C.P. art. 32A.02, commonly known as the "Texas Speedy Trial Act". For the purposes of this act, prosecution began on May 25, 1981, which was the date of McClinton's arrest. McClinton was indicted in cause # 26652 and then re-indicted on June 30, 1981 in cause # 27014R. McClinton contends that the trial court attempted to call cause # 27014R to trial on July 2, 1981, which date was less than 10 days from the

---

1. Theresa Hall is variously referred to as Theresa Hall, Theresa Marshall, and Teresa Hall within the record and affidavit for an arrest warrant to be executed upon McClinton. For purposes of consistency and clarity, we shall use the name Hall herein.

date of McClinton's re-indictment of June 30, 1981, and that this action constituted a violation of V.A.C.C.P. art. 27.12. This article provides that when (s)he is entitled to be served a copy of an indictment, an accused shall have 10 days after receipt of that copy to file written pleadings with the trial court. On July 2, 1981, counsel moved for a continuance, averring that McClinton needed additional time to properly prepare for trial. This motion was granted. We find that McClinton had a period of time far in excess of 10 days in which to file his pleadings and that art. 27.12 was not violated. Furthermore, this motion for continuance contained a waiver of McClinton's right to a speedy trial under V.A.C.C.P. art. 32A, which both McClinton and counsel signed.

Also, on July 2, 1981, both McClinton and his counsel signed a separate "waiver of speedy trial". Again, on July 31, 1981, both McClinton and his counsel signed still another separate "waiver of speedy trial", and both of these documents expressly waived "all of the rights granted to him under the Speedy Trial Act ... and certif(ied) that this Speedy Trial waiver shall continue as long as the case is pending in Court".

These three separate and binding waivers of McClinton's right to a speedy trial under art. 32A, are dispositive of McClinton's alleged ground of error. See V.A.C.C.P. art. 1.14. We note that McClinton's brief argues, as did his counsel at a pretrial hearing upon his motion to dismiss on the basis of non-compliance with art. 32A, that the State announced not ready for trial on October 13, 1981, at which time the case was called to trial, but was passed by the Court at the request of the State. On June 10, 1981, with reference to the original indictment (cause # 26652), the State had announced ready. The docket sheet does not reflect any action by the court on October 13, 1981. However, testimony by both counsel at the hearing upon McClinton's motion to dismiss indicates that the State did not announce that it was not ready for trial. Rather, the testimony reflects that the State expressly denied that it had announced not ready for trial, and that there was sufficient evidence of the State's readiness for trial within the time prescribed by the Speedy Trial Act.

We hold that McClinton did not meet his burden of proof to demonstrate that the State was not ready for trial within the prescribed time limit of art. 32A, and we find that the State's announcement of ready, of June 10, 1981, established prima facie evidence that the State was in fact ready for trial. We therefore sustain the trial court's action in overruling McClinton's motion to dismiss and we overrule his first ground of error.

McClinton's second ground of error urges that the trial court erred in failing to suppress his two statements to the police, on the basis that they were given after, and as a result of, an illegal arrest. Specifically, McClinton maintains that the arrest warrant, issued by a magistrate, and executed upon McClinton, was not supported by probable cause as required by law. This warrant was based upon a supporting affidavit by a homicide investigator with the Forth Worth Police Department. Such affidavits may be based upon either the personal observations of the affiant, or upon hearsay information provided by reliable and credible sources. The instant affidavit was based, inter alia, upon hearsay received by the affiant from Ms. Hall, mother of the deceased child; Dr. Richard Hubbard, who had performed brain surgery upon the child at Harris Hospital; and an unidentified source at Harris Hospital, who told the affiant that the child was in critical condition.

McClinton contends that the instant affidavit contained absolutely no information from which a magistrate could determine that Ms. Hall, Dr. Hubbard, and the unidentified source were credible. We note that the affiant had also relied upon the report of the original officer called to the scene, who had seen extensive head injuries and extensive bruises on Marshall's body. The arrest warrant authorized McClinton's arrest for the offense of injury to a child. V.T.C.A. Penal Code, sec. 22.04. Thus, we must here determine whether the affidavit provided the magistrate with sufficient ba-

sis for an independent determination of probable cause to believe that McClinton had committed the offense of Injury to a Child, V.T.C.A., Penal Code, sec. 22.04, set forth as follows:

(a) A person commits an offense if he intentionally, knowingly, recklessly, or with criminal negligence, by act or omission, engages in conduct that causes to a child who is 14 years of age or younger or to an individual who is 65 years of age or older:

(1) serious bodily injury;

(2) serious physical or mental deficiency or impairment;

(3) disfigurement or deformity; or

(4) bodily injury.

(b) An offense under Subsection (a)(1), (2), or (3) of this section is a felony of the first degree when the conduct is committed intentionally or knowingly. When the conduct is engaged in recklessly it shall be a felony of the third degree.

(c) An offense under Subsection (a)(4) of this section is a felony of the third degree when the conduct is committed intentionally or knowingly. When the conduct is engaged in recklessly it shall be a Class A misdemeanor.

(d) An offense under Subsection (a) of this section when the person acts with criminal negligence shall be a Class A misdemeanor.

■ When an affidavit supporting a request of a magistrate for an arrest warrant is based upon hearsay information, "the affidavit must contain underlying circumstances from which the informant concluded that a crime had been committed and some of the underlying circumstances from which the affiant concluded that the informant was credible or his information reliable. Our determination of the sufficiency of an arrest or search warrant affidavit's statement of probable cause is limited to the four corners of the affidavit. (citations omitted). However, we interpret affidavits for arrest or search warrants in a common sense and realistic manner, (citations omitted), and the magistrate who reviews an affidavit may draw inferences from the facts contained in it. (citations omitted)". *Jones v. State,* 568 S.W.2d 847, 854–5 (Tex. Cr.App.1978), *cert. denied,* 439 U.S. 959, 99 S.Ct. 363, 58 L.Ed.2d 352 (1978). McClinton seems to advocate that we treat the two named hearsay informants as if they were anonymous tipsters or the like, whose credibility the magistrate was unable to evaluate.

The reasons for detailing the basis for an officer's belief in information gained from an undisclosed informant simply do not apply where a private citizen, whose only contact with the police or criminal activity is a result of having witnessed a single criminal act committed by another, furnishes law enforcement officials with information and vouches for such information by allowing the officers to use his name.

\* \* \* \* \* \*

We hold that the requirements of *Aguilar v. Texas,* supra, are met when the hearsay information in an affidavit is derived from named persons who supply detailed information suggesting direct knowledge of the information which they have given. (citations omitted). *Frazier v. State,* 480 S.W.2d 375, 379–380 (Tex.Cr. App.1972).

■ Our study of the affidavit herein establishes that the magistrate had probable cause to issue a warrant for McClinton's arrest. This probable cause was based upon the information provided by Officer Sudan, the original officer dispatched to the hospital, Ms. Hall, the child's mother (who stated that the child was in good health and talking when he left with McClinton, and unconscious when McClinton returned approximately 45 minutes later), and Dr. Hubbard, (who stated that, in his opinion, Marshall was a battered child, and that Marshall had undergone severe head injuries, and that he had observed extensive bruises upon Marshall's body), and was sufficient to establish probable cause to arrest McClinton even absent the information given by an unidentified source at Harris Hospital that Marshall was in critical condition. We find that these named informants were credible wit-

nesses, who supplied direct knowledge of circumstantial evidence pertaining to the offense of injury to a child, as set forth above.

The affidavit provided the magistrate with sufficient basis for an independent determination of probable cause to believe that McClinton had intentionally, knowingly, recklessly, or with criminal negligence, engaged in conduct which caused serious bodily injury to a 3-year old boy, to wit: Michael Marshall. Accordingly, we hold that the statements made by McClinton to police were not the product of an illegal arrest, and not subject to the "fruit of the poisonous tree" doctrine, as urged in McClinton's brief. Ground of error two is hereby overruled.

Grounds of error three through six were briefed together by both counsel, and we shall address them in like manner. McClinton contends, respectively, in these four grounds of error that the trial court erred:

(3) in allowing McClinton's alleged common-law wife, Theresa Hall, to testify;

(4) in not limiting the testimony of Hall to evidence concerning McClinton's actions toward Michael Marshall;

(5) in failing to submit a written issue to the jury inquiring as to the alleged common-law marriage between McClinton and Hall; and

(6) in refusing to allow defense counsel to develop evidence in the presence of the jury concerning the alleged common-law marriage between McClinton and Hall.

There is testimony within the record which could, under other circumstances, have been urged before the jury as evidence of the existence of a common-law marriage between McClinton and Hall. However, V.A.C.C.P. art. 38.11 provides, in pertinent part:

[W]ife or husband may voluntarily testify against each other in any case for an offense involving any grade of assault or violence committed by one against the other or against any child of either under 16 years of age . . .

Therefore, the issue of the existence of an alleged common-law marriage between Hall and McClinton was not relevant to McClinton's attempts at trial to limit or prohibit Hall's testimony concerning McClinton's acts of violence toward Hall's 3-year old son. Even assuming a valid marriage between Hall and McClinton, nothing in art. 38.11, prevents Hall's voluntary testimony in the instant case; nor does anything in art. 38.11, require that the trial court limit the testimony of Hall to evidence concerning acts of her alleged common-law husband toward her son. Neither does art. 38.11, require that Hall have been an eyewitness to assaults upon her child for her testimony to be admissible. *See O'Bryan v. State,* 591 S.W.2d 464, 477 (Tex.Cr.App. 1979), *cert. denied,* 446 U.S. 988, 100 S.Ct. 2975, 64 L.Ed.2d 846 (1980). Consequently, the trial court correctly: allowed Hall to testify; refused to limit her testimony to evidence concerning McClinton's actions toward Michael Marshall; refused to submit a jury issue upon the alleged common-law marriage; and, refused to allow defense counsel to develop evidence before the jury concerning the alleged common-law marriage between Hall and McClinton. We therefore overrule McClinton's grounds of error three through six.

McClinton's brief expressly waives any error with respect to his seventh ground of error, which alleged improper testimony by Hall concerning extraneous offenses by McClinton. This ground of error is thereby overruled.

McClinton's eighth ground of error complains that the trial court erroneously allowed Dr. Peerwani to testify concerning injuries to Marshall's rectum, anus and colon. Dr. Peerwani, the Tarrant County Medical Examiner, concluded that all of Marshall's injuries occurred within the same 48–60 hour time frame, prior to his death at Harris Hospital. The effect of this testimony, when one subtracts the time period Marshall spent in two hospitals, is to place all of Marshall's injuries, including those to

his rectal and genital areas, within the 24-hour period during which Marshall was fatally injured on May 22, 1981. We hold that this testimony was properly admitted, and tended to illustrate the facts and circumstances surrounding Marshall's death, as well as the previous relationship between the accused and the deceased. V.T.C.A. Penal Code, sec. 19.06. We overrule this eighth ground of alleged error.

McClinton's ninth ground of error challenges the sufficiency of the evidence adduced at trial to support McClinton's conviction by the jury for the murder of Michael Marshall. We have set forth the facts above. In viewing the evidence adduced at trial in the light most favorable to the jury verdict, pursuant to the standard of review set forth in *Drager v. State,* 548 S.W.2d 890, 892 (Tex.Cr.App.1977), we hold that the evidence was sufficient to support a rational trier of facts, in finding, beyond a reasonable doubt, each essential element of the offense of murder. *See In Re Winship,* 397 U.S. 358, 365, 90 S.Ct. 1068, 1073, 25 L.Ed.2d 368, 375 (1970). Consequently, McClinton's ninth ground of error is overruled.

McClinton's tenth ground of error maintains that the trial court erred in refusing to submit to the jury a charge upon the lesser included offense of aggravated assault. Likewise, McClinton's eleventh ground of error complains that the trial court erred in refusing to charge upon the lesser included offense of negligent homicide.

Thus, in determining whether a charge on a lesser included offense is required, a two step analysis is to be used. First, the lesser included offense must be included within the proof necessary to establish the offense charged. Secondly, there must be some evidence in the record that if the defendant is guilty, he is guilty of only the lesser offense. (citations omitted.) *Royster v. State,* 622 S.W.2d 442, 446 (Tex.Cr.App.1981).

The settled Texas law on this issue is that the trial court need not give a jury charge upon a lesser included offense merely because proof of that lesser offense is included within proof of the greater offense. *McBrayer v. State,* 504 S.W.2d 445 (Tex.Cr.App.1974). McClinton did not testify, although his two statements to police were admitted as evidence, and while the proof necessary to establish various lesser included offenses may have been presented at trial, there is no evidence in the record that if McClinton is guilty, he is guilty *only* of one of these two urged lesser included offenses, as required in the second step of the *Royster, supra,* test. We therefore sustain the decision of the trial court not to charge upon either aggravated assault or negligent homicide, and overrule grounds of error ten and eleven.

In his twelfth ground of error, McClinton contends that the trial court erred in refusing his requested charge on specific intent to kill. V.T.C.A. Penal Code, sec. 19.02, which is the section defining murder, does not include as an essential element of the offense that an accused shall have had a specific intent to kill a deceased. It is sufficient to show only the intent to cause serious bodily injury. *Garcia v. State,* 541 S.W.2d 428, 430 (Tex.Cr.App.1976). The jury in the instant case could properly have concluded from the evidence that McClinton intended to cause serious bodily injury to his 3-year old victim. Furthermore, we have reviewed the charge and note that a charge upon circumstantial evidence is included, and that the charge sufficiently presents the applicable law, and protects the rights of the defendant. We find no fundamental error therein, and overrule ground of error twelve.

McClinton's thirteenth ground of error alleges that the trial court erred in not granting a requested instruction to the jury pertaining to McClinton's right to discipline Michael Marshall, according to V.T.C.A. Penal Code, sec. 9.61. Sec. 9.61, *supra,* is a defense to the use of force, but not deadly force, against a child younger than 18 years, provided, in this instance, that the parent of Michael Marshall had given McClinton express or implied consent to use such non deadly force to the degree neces-

sary to discipline Marshall, or to safeguard him or promote his welfare.

(3) "Deadly force" means force that is *intended or known* by the actor *to cause, or in the manner of its use is capable of causing,* death or serious bodily injury. [Emphasis added.] V.T.C.A. Penal Code, sec. 9.01.

(34) "Serious bodily injury" means bodily injury that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ. V.T.C.A. Penal Code, sec. 1.07(a)(34).

In his brief, McClinton claims that the violent acts admitted to in his statements to the police represented instances of discipline directed against Michael Marshall, with the consent of Hall, and therefore require a charge under sec. 9.61, *supra.* "Deadly force obviously is not justified in the parent-child situation, either under this section or prior law (citations omitted)." V.T.C.A. Penal Code, sec. 9.61, Practice Commentary (Vernon, 1974). We do not find that the use of force which caused Marshall's extensive injuries, resulting in his death, could even arguably be categorized as the proper exercise of "in loco parentis" discipline upon Marshall by McClinton. Accordingly, we sustain the decision of the trial court not to grant this requested charge, and overrule McClinton's thirteenth ground of error.

■ McClinton, in his fourteenth ground of error, takes the position that the trial court erred in refusing to order the State to elect a specific count of the indictment under which to proceed, prior to the court's submission of the jury charge. This argument is unsound. *See* V.A.C.C.P. art. 21.24. "This article does not prohibit charging several ways in which the offense was committed." (citations omitted.) *Tibbetts v. State,* 494 S.W.2d 552, 555 (Tex.Cr.App. 1973). Ground of error fourteen is hereby overruled.

■ McClinton's final, and fifteenth, ground of error proposes that his conviction be reversed because a fatal variance exists between the indictment and the court's charge, with reference to the cause of Marshall's death. Specifically, McClinton notes that the indictment states that McClinton did, "intentionally and knowingly cause the death of an individual, Michael Marshall, by striking him with his hands, *and* physically throwing the child about . . .", whereas the court's charge states "did then and there intentionally or knowingly cause the death of . . . Marshall, by striking him with his hand, *or* physically throwing the child about . . ." [Emphasis ours.] McClinton apparently contends that it was error to allow the jury to convict him of the murder of Michael Marshall by either of these means, rather than by both. Furthermore, McClinton argues that there was no proof at trial to support the allegation that throwing Marshall caused his death. It was not error for the State to plead in the conjunctive and for the court to charge in the disjunctive, in the manner here attacked. Proof of one of the means of death would be sufficient for the jury to convict. *Zanghetti v. State,* 618 S.W.2d 383, (Tex.Cr.App.1981). The evidence tended to prove that McClinton struck Marshall with his hands, and that this was the cause of Marshall's death; and it was not necessary for the State to prove that throwing Marshall about had caused his death. McClinton's fifteenth ground of error is overruled.

We affirm McClinton's conviction for the murder of Michael Marshall.