newman v. state

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-02-287-CR

BRADLEY CLYDE NEWMAN APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

I. I
NTRODUCTION

Appellant Bradley Clyde Newman appeals his jury conviction for the offense of capital murder.  In five points, appellant complains the trial court committed error by:  (1) failing to suppress appellant’s oral and written statements; (2) considering evidence outside the affidavit in determining the validity of the arrest warrant; (3) allowing double hearsay into evidence at the pre-trial hearing; (4) failing to grant a mistrial based on improper comment concerning appellant’s right to remain silent; and (5) failing to grant a mistrial based on the prosecutor’s argument that was outside the record
.  We affirm.

II. F
ACTUAL
 
AND
 P
ROCEDURA
L
 B
ACKGROUND

In the spring of 2001, appellant began dating Christine Wolf after they met at Pitcher’s Sports Bar where Wolf worked.  Crystal Harrington, Wolf’s friend and co-worker, testified appellant had an addiction to crack cocaine.  Around 4:00 a.m. on July 7, 2001, David Rose and William Daume, who were appellant’s co-workers, came to Pitcher’s, where they were “regulars,” and told Harrington that appellant had confessed to killing Wolf.  Harrington called 911 to report the murder and gave police Wolf’s address and telephone number.

Around 4:30 a.m., the Arlington Police Department dispatched officers to talk to the complainants at Pitcher’s and to conduct a welfare check at Wolf’s apartment.  At Pitcher’s, Officer Heath Cooke talked to Daume and Rose.  At Wolf’s apartment, Officers Karen Donahue and Craig Rhodes obtained a key from the courtesy officer living at the apartment complex after knocking on the apartment door and receiving no reply.  Officer Donahue discovered the body of a deceased female wrapped in a blue blanket inside Wolf’s bathroom closet.  The officers then secured the apartment, contacted the Crime Scene Unit, and waited outside.  Once Officer Cooke learned a body was discovered, he took Daume and Rose to the parking lot of their apartment, where appellant had been staying and was inside asleep, and obtained their consent to search.  However, officers only monitored the apartment waiting for an arrest warrant.

Around 6:30 a.m., Detectives Byron Stewart and Danny Nutt of the Arlington Police Department arrived at Wolf’s apartment.  While Detective Nutt inspected the apartment, Officer Donahue briefed Detective Stewart regarding what she found in the apartment.  Detective Stewart then proceeded to the police station to prepare an arrest warrant.  At the station, Detective Stewart read the prepared statements of Daume and Rose, talked with Detective Nutt over the telephone regarding the evidence at the scene that corroborated the statements, and prepared the warrant for appellant’s arrest. 

After receiving word that the arrest warrant had been signed, the officers arrested appellant and read him his 
Miranda
 warnings.  Appellant responded that he understood the warnings.  Officers searched the bedroom in which appellant had been staying and found several items belonging to Wolf.  Officers also located Wolf’s vehicle in the parking lot.

At the Arlington jail, the appellant again received 
Miranda 
warnings.  The appellant initialed each warning and signed the document containing the written warnings.  After speaking with Detective Stewart and having been duly warned, the appellant gave a detailed confession describing how he murdered Wolf following an argument in which Wolf told appellant she had no more money to give him to buy crack cocaine.  He went on to explain how he looted Wolf’s apartment, used the proceeds to buy crack cocaine, attempted to conceal the crime, and confessed to Daume.

Prior to trial, appellant filed a motion to suppress any oral or written statements obtained as a result of his arrest.  Following a hearing, the trial court concluded that the arrest warrant affidavit was sufficient, and denied the motion to suppress.  At trial, the jury found appellant guilty of the offense of capital murder as alleged in the indictment and the trial court
(footnote: 2) sentenced him to life imprisonment.

III. M
OTION
 
TO
 S
UPPRESS
 A
PPELLANT’S
 S
TATEMENTS

In his first point, appellant complains the trial court erred in failing to suppress his oral and written statements because they resulted from an illegal arrest not supported by a valid warrant.  Specifically, appellant claims the affidavit did not reflect personal knowledge of the affiant Detective Stewart, but instead improperly relies on “double and even triple hearsay.”

The United States and Texas constitutions provide that an arrest warrant must be based on probable cause.  
See
 U.S. 
Const
. amend. IV; T
EX
. C
ONST
.  art. I, § 9.  Probable cause may be established by a supporting affidavit, which when viewed in the totality of the circumstance, contains sufficient information to justify a neutral and detached magistrate’s decision to issue the warrant. 
 Whiteley v. Warden, Wyo. State Penitentiary
, 401 U.S. 560, 564-65, 91 S. Ct. 1031, 1034-35 (1971);
 Illinois v. Gates
, 462 U.S. 213, 239, 103 S. Ct. 2317, 2333 (1983). Such affidavits may be based upon either personal observations of the affiant or hearsay information provided by reliable and credible sources.
 Juarez v. State
, 758 S.W.2d 772, 774 n.1 (Tex. Crim. App. 1988), 
overruled on other grounds by Boyle v. State
, 820 S.W.2d 122, 132 n.10 (Tex. Crim. App. 1989), 
cert. denied,
 503 U.S. 921 (1992); 
McClinton v. State
, 647 S.W.2d 400, 403 (Tex. App.—Fort Worth 1983, pet. ref’d).  Whether an affidavit in support of an arrest warrant is sufficient to show probable cause must be determined from the four corners of the affidavit itself.  
Gibbs
 
v. State
, 819 S.W.2d 821, 830 (Tex. Crim. App. 1991).  Affidavits must be interpreted in a common sense and realistic manner and the magistrate who reviews an affidavit may draw inferences from the facts contained in it.  
Id
.

Here, the affidavit prepared by Detective Stewart, stating that probable cause existed to arrest appellant for capital murder, was based upon statements made to the Arlington Police Department by Daume and statements made to Detective Stewart by Arlington police officers who confirmed Daume’s report.  The affidavit stated Daume reported the following underlying circumstances to members of the Arlington Police Department:  (1) appellant, Daume’s friend, told him that he killed his girlfriend Wolf and left her body at her apartment; (2) appellant borrowed a pocketknife from him on July 3, 2001; (3) appellant told him that he took Wolf’s cellular phone and vehicle from her apartment; and (4) appellant attempted to cover bloodstains on the floor in Wolf’s apartment by laying towels over the blood.

Additionally, the affidavit stated the following facts and circumstances  supporting Detective Stewart’s probable cause belief that Daume was telling the truth: (1) Arlington police officers went to Wolf’s apartment to do a welfare check and confirmed that a deceased person was in the apartment; (2) Detective Nutt said the deceased person appeared to be Wolf; and (3) Detective Nutt reported that he observed towels on the floor in Wolf’s apartment and it appeared bloodstains were underneath the towels.

Regardless of the affiant's personal knowledge, we find the affidavit contained sufficient probable cause based on reliable hearsay information.  
Aguilar v. State
 originally set forth the standard for determining the sufficiency of an affidavit based on hearsay information.  378 U.S. 108, 114, 84 S. Ct. 1509, 1514 (1964).  The Supreme Court held that an affidavit had to contain sufficient information to reflect the credibility of the informer, and the underlying facts upon which the informant based his beliefs.  
Id.
  In
 Illinois v. Gates
, the Supreme Court abandoned the Aguilar two-prong standard and replaced it with the less stringent “totality of the circumstances” test.  462 U.S. at 238, 103 S. Ct. at 2332. 

Despite appellant's allegations that the affidavit reflects no personal knowledge on the part of the affiant, the affidavit shows that the affiant was a member of the Arlington Police Department and his fellow officers received or reported the information upon which the affiant based his probable cause belief.  The law provides, “when there has been some cooperation . . . between members of the same [law enforcement] agency, the sum of the information known to the cooperating . . . officers at the time of an arrest . . . by any of the officers involved is to be considered in determining whether there was sufficient probable cause therefor.”  
Woodward v. State
, 668 S.W.2d 337, 344 (Tex. Crim. App.1984) (op. on reh’g), 
cert. denied, 
469 U.S. 1181 (1985); 
Rodela v. State
, 829 S.W.2d 845, 850 (Tex. App.—Houston [1
st
 Dist.] 1992, pet. ref’d).  Thus, the affidavit’s lack of detail on how the information was relayed within the Arlington Police Department does not render it insufficient since the affidavit provides the original source for all the information used by Detective Stewart to establish probable cause. 

Accordingly, under the totality of the circumstances, we hold the affidavit provided the trial court with sufficient basis for an independent determination of probable cause to issue the arrest warrant.  The trial court did not err in denying appellant's motion to suppress the appellant’s statements.  We overrule appellant’s first point.

IV. E
VIDENCE
 O
UTSIDE
 
THE
 A
FFIDAVIT

In his second point,
 
appellant complains the trial court erred in considering evidence outside the four corners of the affidavit in determining the validity of the arrest warrant.  It is well settled that, in determining the sufficiency of an affidavit for an arrest warrant, a reviewing court is limited to the facts contained within the four corners of the affidavit and the reasonable inferences drawn therefrom to justify the magistrate’s conclusion.  
McFarland v. State
, 928 S.W.2d 482, 510 (Tex. Crim. App. 1996), 
cert. denied
, 519 U.S. 1119
 
(1997); 
Wynn v. State
, 996 S.W.2d 324, 326 (Tex. App.—Fort Worth 1999, no pet.). 

At the pre-trial hearing, the trial court considered several of appellant’s motions including appellant’s Motion to Suppress Oral or Written Statements.  After hearing evidence regarding several of the motions, the court denied appellant’s motion to suppress stating, “I think that the information contained in the warrant itself and the affidavit gave the magistrate proper information in order to issue the arrest warrant.”  Given this express statement by the trial court, there is nothing to suggest that the court deviated beyond the four corners of the arrest warrant affidavit in finding it sufficient to support the warrant.  We overrule appellant’s second point. 

V. H
EARSAY
 E
VIDENCE
 
AT
 P
RE
-T
RIAL
 H
EARING

In his third point, appellant complains that the trial court committed error in allowing double hearsay into evidence during the suppression hearing, thus denying appellant his right to confront and cross-examine witnesses.  Citing 
Juarez
, 758 S.W.2d at 774 n.1.,  appellant concedes that hearsay is admissible in pre-trial hearings, but contends Detective Stewart’s testimony constituted double hearsay which is only admissible in suppression hearings if there is a basis for crediting each statement and they are corroborated by other facts.

In 
Granados v. State
, the Texas Court of Criminal Appeals upheld a trial court’s ruling admitting the double hearsay testimony of a police officer, who testified regarding what the victim’s family told his fellow officer over the phone.  85 S.W.3d 217, 226-27 (Tex. Crim. App. 2002), 
cert. denied
, 123 S.  Ct. 1578 (2003).  There, the court held “[b]ecause suppression hearings involve the determination of preliminary questions concerning the admissibility of evidence, the language of the current rules indicates that the rules of evidence (except privileges) no longer apply to suppression hearings.”  
Id
. at 227.  Therefore, the trial court properly admitted the contested testimony despite the appellant’s double hearsay objections.  We overrule appellant’s third point.

VI. C
OMMENT
 
ON
 F
AILURE
 
TO
 T
ESTIFY

In his fourth point, appellant complains the trial court committed error by failing to grant a mistrial based on a witness’s improper comment concerning appellant’s right to remain silent.  Appellant did not testify before the jury during either phase of the trial.  During the appellant’s cross-examination of Detective Stewart regarding discrepancies in appellant’s statement he had taken, the following exchange occurred:

[DEFENSE COUNSEL]:  Do you interpret that as a different time frame even though it’s saying the same words as, I asked Christine if she had any more money and she told me she had given me all of the money she could?

[DETECTIVE STEWART]:  I guess it’s a matter of semantics, sir. I mean, I think, again, Mr. Newman probably could clarify this but the goal was to try to go chronological --

[DEFENSE COUNSEL]:  I’m going to object to that statement and ask the jury to disregard that statement.

THE COURT:  The jury will disregard the statement. 

[DEFENSE COUNSEL]:  And, Your Honor, in view of that statement, I must ask for a mistrial.

THE COURT: That’s denied.

Since the trial court sustained appellant’s objection and instructed the jury to disregard the witness’s comment, but denied appellant’s motion for mistrial, the issue is whether the trial court erred in denying the mistrial. 
 See Faulkner v. State
, 940 S.W.2d 308, 312 (Tex. App.—Fort Worth 1997, pet. ref’d) (en banc op. on reh’g); 
see also 
Tex. R. App. P. 33.1
(a)(2) (stating a trial court’s ruling may be implied).  Its resolution depends on whether the court’s instruction to disregard cured any prejudicial effect from the improper comment. 
Faulkner
, 940 S.W.2d at 312.  An instruction to disregard normally cures error, except in extreme cases where the evidence is clearly calculated to inflame the minds of the jury and is of such a character as to suggest the impossibility of withdrawing the impression produced on the jurors' minds.  
Moore v. State
, 999 S.W.2d 385, 405 (Tex. Crim. App. 1999), 
cert. denied
, 530 U.S. 1216 (2000);
 Dinkins v. State
, 894 S.W.2d 330, 356 (Tex. Crim. App.), 
cert. denied
, 516 U.S. 832 (1995); 
Faulkner
, 940 S.W.2d at 312.  A trial court's denial of a mistrial is reviewed under an abuse of discretion standard.  
Wood v. State
, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000). 

Here, the comment does not fall within the “extreme” category.  Detective Stewart’s response was not a direct comment on appellant’s failure to testify, but an off-hand reference by the detective that the appellant could clarify any discrepancies while explaining to appellant’s counsel that in writing the statement, the goal was to correctly chronicle the detailed events. Moreover, Detective Stewart’s response was prompted by appellant’s cross-examination regarding the process by which appellant made his written statement; the State did not solicit the comment on direct examination.  Thus, we do not believe that Detective Stewart’s comment was so blatant that it rendered an instruction to disregard ineffective.  Accordingly, the court's instruction to disregard the comment cured the error.  We overrule appellant’s fourth point.

VII. P
ROSECUTOR’S
 A
RGUMENT

In his fifth point, appellant complains the trial court committed error in failing to grant a mistrial based on the prosecutor’s argument outside the record.  Appellant's complaint is based on the following jury argument and objection:

[THE STATE]:  This man is a brutal killer. He sits before you today and you have the ability -- our community does not tolerate killing, it does not tolerate robbery and we have done our jobs at the DA’s office, at the police department bringing you evidence against this killer and really,
 you folks are now the last link in this chain of justice and society will judge you for how you judge him and this family --

[DEFENSE COUNSEL]:  Objection, that’s improper final argument, attempting to put the onus on the jury as to making a decision on the basis of what some other unknown people will think as opposed to what the facts show as interpreted through the law. 

THE COURT:  All right. The jury will make their decisions based upon the evidence that they have heard, as I stated, from the witness chair and by the exhibits and you are not to make any decisions based on anything else.

[DEFENSE COUNSEL]:  Is my objection sustained?

THE COURT:  Sustained.

[DEFENSE COUNSEL]:  May I have an instruction that they are to disregard the last statement by the Prosecutor?

THE COURT:  You will disregard that last statement.

[DEFENSE COUNSEL]:  Knowing the Court has done all it can, we respectfully ask for a mistrial.

THE COURT:  Denied.

When the trial court sustains an objection and instructs the jury to disregard but denies a defendant’s motion for a mistrial, the issue is whether the trial court erred in denying the mistrial.  
Faulkner
, 940 S.W.2d at 312.  Its resolution depends on whether the court’s instruction to disregard cured the prejudicial effect, if any, of the improper argument.  
Id. 
 Generally, an instruction to disregard impermissible argument cures any prejudicial effect.  
Wesbrook v. State
, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000), 
cert. denied,
 532 U.S. 944 (2001); 
Dinkins,
 894 S.W.2d at 357.  In assessing the curative effect of the court’s instruction to disregard, the correct inquiry is whether, in light of the record as a whole, the argument was extreme, manifestly improper, injected new and harmful facts into the case, or violated a mandatory statutory provision and was thus so inflammatory that the instruction to disregard was ineffective.  
Wesbrook,
 29 S.W.3d at 115-16.  If the instruction cured any prejudicial effect caused by the improper argument, a reviewing court should find that the trial court did not err.  
Dinkins
, 894 S.W.2d at 357; 
Faulkner
, 940 S.W.2d at 312.  Only if the reviewing court determines the instruction was ineffective does the court go on to determine whether, in light of the record as a whole, the argument had a substantial and injurious effect or influence on the jury’s verdict.  
Tex. R. App. P. 
44.2(b); 
King v. State
, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997).  Here, the record shows the improper argument was cured by the court’s prompt and arrant instruction to disregard.  Therefore, the court did not abuse its discretion in refusing to grant a mistrial.  We overrule appellant’s fifth point.

VIII. C
ONCLUSION

Having overruled appellant’s points on appeal, we affirm the judgment of the trial court.

SAM J. DAY

JUSTICE

PANEL A: CAYCE, C.J.; DAY and GARDNER, JJ.

DO NOT PUBLISH

Tex. R. App. P. 
47.2(b)

DELIVERED: October 30, 2003

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2: There is a conflict between the Judgment in the Court’s Record, which says the jury sentenced appellant, and the Reporter’s Record, which says the trial court sentenced appellant.