COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 
2-02-287-CR
 
BRADLEY CLYDE NEWMAN                                                    APPELLANT 
 
V.
 
THE STATE OF TEXAS                                                                  STATE 
 
------------
 
FROM 
CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY 
 
------------
 
MEMORANDUM OPINION



 
------------
I. INTRODUCTION
        Appellant Bradley Clyde Newman appeals his jury conviction for the
offense of capital murder. In five points, appellant complains the trial court
committed error by: (1) failing to suppress appellant’s oral and written
statements; (2) considering evidence outside the affidavit in determining the
validity of the arrest warrant; (3) allowing double hearsay into evidence at the
pre-trial hearing; (4) failing to grant a mistrial based on improper comment
concerning appellant’s right to remain silent; and (5) failing to grant a mistrial
based on the prosecutor’s argument that was outside the record. We affirm.
II. FACTUAL AND PROCEDURAL BACKGROUNDIn the spring of 2001, appellant began dating Christine Wolf after they
met at Pitcher’s Sports Bar where Wolf worked. Crystal Harrington, Wolf’s
friend and co-worker, testified appellant had an addiction to crack cocaine. 
Around 4:00 a.m. on July 7, 2001, David Rose and William Daume, who were
appellant’s co-workers, came to Pitcher’s, where they were “regulars,” and told
Harrington that appellant had confessed to killing Wolf. Harrington called 911
to report the murder and gave police Wolf’s address and telephone number.
        Around 4:30 a.m., the Arlington Police Department dispatched officers
to talk to the complainants at Pitcher’s and to conduct a welfare check at
Wolf’s apartment. At Pitcher’s, Officer Heath Cooke talked to Daume and
Rose. At Wolf’s apartment, Officers Karen Donahue and Craig Rhodes obtained
a key from the courtesy officer living at the apartment complex after knocking
on the apartment door and receiving no reply. Officer Donahue discovered the
body of a deceased female wrapped in a blue blanket inside Wolf’s bathroom
closet. The officers then secured the apartment, contacted the Crime Scene
Unit, and waited outside. Once Officer Cooke learned a body was discovered,
he took Daume and Rose to the parking lot of their apartment, where appellant
had been staying and was inside asleep, and obtained their consent to search. 
However, officers only monitored the apartment waiting for an arrest warrant.
        Around 6:30 a.m., Detectives Byron Stewart and Danny Nutt of the
Arlington Police Department arrived at Wolf’s apartment. While Detective Nutt
inspected the apartment, Officer Donahue briefed Detective Stewart regarding
what she found in the apartment. Detective Stewart then proceeded to the
police station to prepare an arrest warrant. At the station, Detective Stewart
read the prepared statements of Daume and Rose, talked with Detective Nutt
over the telephone regarding the evidence at the scene that corroborated the
statements, and prepared the warrant for appellant’s arrest. 
        After receiving word that the arrest warrant had been signed, the officers
arrested appellant and read him his Miranda warnings. Appellant responded
that he understood the warnings. Officers searched the bedroom in which
appellant had been staying and found several items belonging to Wolf. Officers
also located Wolf’s vehicle in the parking lot.
        At the Arlington jail, the appellant again received Miranda warnings. The
appellant initialed each warning and signed the document containing the written
warnings. After speaking with Detective Stewart and having been duly warned,
the appellant gave a detailed confession describing how he murdered Wolf
following an argument in which Wolf told appellant she had no more money to
give him to buy crack cocaine. He went on to explain how he looted Wolf’s
apartment, used the proceeds to buy crack cocaine, attempted to conceal the
crime, and confessed to Daume.
        Prior to trial, appellant filed a motion to suppress any oral or written
statements obtained as a result of his arrest. Following a hearing, the trial
court concluded that the arrest warrant affidavit was sufficient, and denied the
motion to suppress. At trial, the jury found appellant guilty of the offense of
capital murder as alleged in the indictment and the trial court


 sentenced him
to life imprisonment.
III. MOTION TO SUPPRESS APPELLANT’S STATEMENTS
        In his first point, appellant complains the trial court erred in failing to
suppress his oral and written statements because they resulted from an illegal
arrest not supported by a valid warrant. Specifically, appellant claims the
affidavit did not reflect personal knowledge of the affiant Detective Stewart,
but instead improperly relies on “double and even triple hearsay.”
        The United States and Texas constitutions provide that an arrest warrant
must be based on probable cause. See U.S. Const. amend. IV; TEX. CONST. 
art. I, § 9. Probable cause may be established by a supporting affidavit, which
when viewed in the totality of the circumstance, contains sufficient information
to justify a neutral and detached magistrate’s decision to issue the warrant. 
Whiteley v. Warden, Wyo. State Penitentiary, 401 U.S. 560, 564-65, 91 S. Ct.
1031, 1034-35 (1971); Illinois v. Gates, 462 U.S. 213, 239, 103 S. Ct. 2317,
2333 (1983). Such affidavits may be based upon either personal observations
of the affiant or hearsay information provided by reliable and credible sources.
Juarez v. State, 758 S.W.2d 772, 774 n.1 (Tex. Crim. App. 1988), overruled
on other grounds by Boyle v. State, 820 S.W.2d 122, 132 n.10 (Tex. Crim.
App. 1989), cert. denied, 503 U.S. 921 (1992); McClinton v. State, 647
S.W.2d 400, 403 (Tex. App.—Fort Worth 1983, pet. ref’d). Whether an
affidavit in support of an arrest warrant is sufficient to show probable cause
must be determined from the four corners of the affidavit itself. Gibbs v. State,
819 S.W.2d 821, 830 (Tex. Crim. App. 1991). Affidavits must be interpreted
in a common sense and realistic manner and the magistrate who reviews an
affidavit may draw inferences from the facts contained in it. Id.
        Here, the affidavit prepared by Detective Stewart, stating that probable
cause existed to arrest appellant for capital murder, was based upon statements
made to the Arlington Police Department by Daume and statements made to
Detective Stewart by Arlington police officers who confirmed Daume’s report. 
The affidavit stated Daume reported the following underlying circumstances to
members of the Arlington Police Department: (1) appellant, Daume’s friend,
told him that he killed his girlfriend Wolf and left her body at her apartment; (2)
appellant borrowed a pocketknife from him on July 3, 2001; (3) appellant told
him that he took Wolf’s cellular phone and vehicle from her apartment; and (4)
appellant attempted to cover bloodstains on the floor in Wolf’s apartment by
laying towels over the blood.
        Additionally, the affidavit stated the following facts and circumstances 
supporting Detective Stewart’s probable cause belief that Daume was telling
the truth: (1) Arlington police officers went to Wolf’s apartment to do a welfare
check and confirmed that a deceased person was in the apartment; (2)
Detective Nutt said the deceased person appeared to be Wolf; and (3) Detective
Nutt reported that he observed towels on the floor in Wolf’s apartment and it
appeared bloodstains were underneath the towels.
        Regardless of the affiant's personal knowledge, we find the affidavit
contained sufficient probable cause based on reliable hearsay information. 
Aguilar v. State originally set forth the standard for determining the sufficiency
of an affidavit based on hearsay information. 378 U.S. 108, 114, 84 S. Ct.
1509, 1514 (1964). The Supreme Court held that an affidavit had to contain
sufficient information to reflect the credibility of the informer, and the
underlying facts upon which the informant based his beliefs. Id. In Illinois v.
Gates, the Supreme Court abandoned the Aguilar two-prong standard and
replaced it with the less stringent “totality of the circumstances” test. 462
U.S. at 238, 103 S. Ct. at 2332. 
        Despite appellant's allegations that the affidavit reflects no personal
knowledge on the part of the affiant, the affidavit shows that the affiant was
a member of the Arlington Police Department and his fellow officers received
or reported the information upon which the affiant based his probable cause
belief. The law provides, “when there has been some cooperation . . . between
members of the same [law enforcement] agency, the sum of the information
known to the cooperating . . . officers at the time of an arrest . . . by any of the
officers involved is to be considered in determining whether there was sufficient
probable cause therefor.” Woodward v. State, 668 S.W.2d 337, 344 (Tex.
Crim. App.1984) (op. on reh’g), cert. denied, 469 U.S. 1181 (1985); Rodela
v. State, 829 S.W.2d 845, 850 (Tex. App.—Houston [1st Dist.] 1992, pet.
ref’d). Thus, the affidavit’s lack of detail on how the information was relayed
within the Arlington Police Department does not render it insufficient since the
affidavit provides the original source for all the information used by Detective
Stewart to establish probable cause. 
        Accordingly, under the totality of the circumstances, we hold the affidavit
provided the trial court with sufficient basis for an independent determination
of probable cause to issue the arrest warrant. The trial court did not err in
denying appellant's motion to suppress the appellant’s statements. We overrule
appellant’s first point.
 
IV. EVIDENCE OUTSIDE THE AFFIDAVIT
        In his second point, appellant complains the trial court erred in considering
evidence outside the four corners of the affidavit in determining the validity of
the arrest warrant. It is well settled that, in determining the sufficiency of an
affidavit for an arrest warrant, a reviewing court is limited to the facts
contained within the four corners of the affidavit and the reasonable inferences
drawn therefrom to justify the magistrate’s conclusion. McFarland v. State,
928 S.W.2d 482, 510 (Tex. Crim. App. 1996), cert. denied, 519 U.S. 1119
(1997); Wynn v. State, 996 S.W.2d 324, 326 (Tex. App.—Fort Worth 1999,
no pet.). 
        At the pre-trial hearing, the trial court considered several of appellant’s
motions including appellant’s Motion to Suppress Oral or Written Statements. 
After hearing evidence regarding several of the motions, the court denied
appellant’s motion to suppress stating, “I think that the information contained
in the warrant itself and the affidavit gave the magistrate proper information in
order to issue the arrest warrant.” Given this express statement by the trial
court, there is nothing to suggest that the court deviated beyond the four
corners of the arrest warrant affidavit in finding it sufficient to support the
warrant. We overrule appellant’s second point. 
 
V. HEARSAY EVIDENCE AT PRE-TRIAL HEARING
        In his third point, appellant complains that the trial court committed error
in allowing double hearsay into evidence during the suppression hearing, thus
denying appellant his right to confront and cross-examine witnesses. Citing
Juarez, 758 S.W.2d at 774 n.1., appellant concedes that hearsay is admissible
in pre-trial hearings, but contends Detective Stewart’s testimony constituted
double hearsay which is only admissible in suppression hearings if there is a
basis for crediting each statement and they are corroborated by other facts.
        In Granados v. State, the Texas Court of Criminal Appeals upheld a trial
court’s ruling admitting the double hearsay testimony of a police officer, who
testified regarding what the victim’s family told his fellow officer over the
phone. 85 S.W.3d 217, 226-27 (Tex. Crim. App. 2002), cert. denied, 123 S. 
Ct. 1578 (2003). There, the court held “[b]ecause suppression hearings involve
the determination of preliminary questions concerning the admissibility of
evidence, the language of the current rules indicates that the rules of evidence
(except privileges) no longer apply to suppression hearings.” Id. at 227. 
Therefore, the trial court properly admitted the contested testimony despite the
appellant’s double hearsay objections. We overrule appellant’s third point.
VI. COMMENT ON FAILURE TO TESTIFY
        In his fourth point, appellant complains the trial court committed error by
failing to grant a mistrial based on a witness’s improper comment concerning
appellant’s right to remain silent. Appellant did not testify before the jury
during either phase of the trial. During the appellant’s cross-examination of
Detective Stewart regarding discrepancies in appellant’s statement he had
taken, the following exchange occurred:
[DEFENSE COUNSEL]: Do you interpret that as a different
time frame even though it’s saying the same words as, I asked
Christine if she had any more money and she told me she had given
me all of the money she could?
 
[DETECTIVE STEWART]: I guess it’s a matter of semantics,
sir. I mean, I think, again, Mr. Newman probably could clarify this
but the goal was to try to go chronological --
 
[DEFENSE COUNSEL]: I’m going to object to that statement
and ask the jury to disregard that statement.
 
THE COURT: The jury will disregard the statement. 
                [DEFENSE COUNSEL]: And, Your Honor, in view of that
statement, I must ask for a mistrial.
 
THE COURT: That’s denied.
        Since the trial court sustained appellant’s objection and instructed the jury
to disregard the witness’s comment, but denied appellant’s motion for mistrial,
the issue is whether the trial court erred in denying the mistrial. See Faulkner
v. State, 940 S.W.2d 308, 312 (Tex. App.—Fort Worth 1997, pet. ref’d) (en
banc op. on reh’g); see also Tex. R. App. P. 33.1(a)(2) (stating a trial court’s
ruling may be implied). Its resolution depends on whether the court’s
instruction to disregard cured any prejudicial effect from the improper comment.
Faulkner, 940 S.W.2d at 312. An instruction to disregard normally cures error,
except in extreme cases where the evidence is clearly calculated to inflame the
minds of the jury and is of such a character as to suggest the impossibility of
withdrawing the impression produced on the jurors' minds. Moore v. State,
999 S.W.2d 385, 405 (Tex. Crim. App. 1999), cert. denied, 530 U.S. 1216
(2000); Dinkins v. State, 894 S.W.2d 330, 356 (Tex. Crim. App.), cert. denied,
516 U.S. 832 (1995); Faulkner, 940 S.W.2d at 312. A trial court's denial of
a mistrial is reviewed under an abuse of discretion standard. Wood v. State,
18 S.W.3d 642, 648 (Tex. Crim. App. 2000). 
        Here, the comment does not fall within the “extreme” category. 
Detective Stewart’s response was not a direct comment on appellant’s failure
to testify, but an off-hand reference by the detective that the appellant could
clarify any discrepancies while explaining to appellant’s counsel that in writing
the statement, the goal was to correctly chronicle the detailed events.
Moreover, Detective Stewart’s response was prompted by appellant’s cross-examination regarding the process by which appellant made his written
statement; the State did not solicit the comment on direct examination. Thus,
we do not believe that Detective Stewart’s comment was so blatant that it
rendered an instruction to disregard ineffective. Accordingly, the court's
instruction to disregard the comment cured the error. We overrule appellant’s
fourth point.
VII. PROSECUTOR’S ARGUMENT
        In his fifth point, appellant complains the trial court committed error in
failing to grant a mistrial based on the prosecutor’s argument outside the
record. Appellant's complaint is based on the following jury argument and
objection:
[THE STATE]: This man is a brutal killer. He sits before you
today and you have the ability -- our community does not tolerate
killing, it does not tolerate robbery and we have done our jobs at
the DA’s office, at the police department bringing you evidence
against this killer and really, you folks are now the last link in this
chain of justice and society will judge you for how you judge him
and this family --
 
[DEFENSE COUNSEL]: Objection, that’s improper final
argument, attempting to put the onus on the jury as to making a
decision on the basis of what some other unknown people will
think as opposed to what the facts show as interpreted through the
law.
 
THE COURT: All right. The jury will make their decisions
based upon the evidence that they have heard, as I stated, from
the witness chair and by the exhibits and you are not to make any
decisions based on anything else.
 
[DEFENSE COUNSEL]: Is my objection sustained?
 
THE COURT: Sustained.
 
[DEFENSE COUNSEL]: May I have an instruction that they
are to disregard the last statement by the Prosecutor?
THE COURT: You will disregard that last statement.
 
[DEFENSE COUNSEL]: Knowing the Court has done all it
can, we respectfully ask for a mistrial.
 
THE COURT: Denied.
 
        When the trial court sustains an objection and instructs the jury to
disregard but denies a defendant’s motion for a mistrial, the issue is whether
the trial court erred in denying the mistrial. Faulkner, 940 S.W.2d at 312. Its
resolution depends on whether the court’s instruction to disregard cured the
prejudicial effect, if any, of the improper argument. Id. Generally, an
instruction to disregard impermissible argument cures any prejudicial effect. 
Wesbrook v. State, 29 S.W.3d 103, 115 (Tex. Crim. App. 2000), cert. denied,
532 U.S. 944 (2001); Dinkins, 894 S.W.2d at 357. In assessing the curative
effect of the court’s instruction to disregard, the correct inquiry is whether, in
light of the record as a whole, the argument was extreme, manifestly improper,
injected new and harmful facts into the case, or violated a mandatory statutory
provision and was thus so inflammatory that the instruction to disregard was
ineffective. Wesbrook, 29 S.W.3d at 115-16. If the instruction cured any
prejudicial effect caused by the improper argument, a reviewing court should
find that the trial court did not err. Dinkins, 894 S.W.2d at 357; Faulkner, 940
S.W.2d at 312. Only if the reviewing court determines the instruction was
ineffective does the court go on to determine whether, in light of the record as
a whole, the argument had a substantial and injurious effect or influence on the
jury’s verdict. Tex. R. App. P. 44.2(b); King v. State, 953 S.W.2d 266, 271
(Tex. Crim. App. 1997). Here, the record shows the improper argument was
cured by the court’s prompt and arrant instruction to disregard. Therefore, the
court did not abuse its discretion in refusing to grant a mistrial. We overrule
appellant’s fifth point.
VIII. CONCLUSION
        Having overruled appellant’s points on appeal, we affirm the judgment of
the trial court.
 
SAM J. DAY
                                                          JUSTICE
 
PANEL A:   CAYCE, C.J.; DAY and GARDNER, JJ.
 
DO NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: October 30, 2003